Jose E. CARRILLO MARIN,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.

No. 84–1443.

United States Court of Appeals,
First Circuit.

Submitted Dec. 7, 1984.

Decided March 28, 1985.

Ramon Morales and Juan A. Hernandez Rivera, Hato Rey, P.R., on brief, for plaintiff, appellant.

Julie Simpson, Office of the Gen. Counsel, Social Sec. Div., Baltimore, Md., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Asst. Gen. Counsel, Randolph W. Gaines, Deputy Asst. Gen. Counsel for Litigation, and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

PER CURIAM.

Appellant Jose E. Carrillo Marin brought this action in the United States District Court for the District of Puerto Rico seeking judicial review of the final decision of the Secretary of Health and Human Services denying his claim of entitlement to disability benefits. The district court affirmed the decision of the Secretary, finding that there was substantial evidence in

the record to support the Secretary's determination that appellant was not under a disability as defined by the Social Security Act. We reverse and remand for further proceedings.

Appellant filed a claim for benefits in September 1982 claiming an inability to work since August of 1980 when he quit the job he had held for ten years as a refrigeration and air conditioning technician due to an alleged exacerbation of his mental illness. Although there is some conflict in the record on the point, it appears that his insured status lapsed in September 1981. Compare, Tr. 15, 47 and 110 with Tr. 11 and 14. The question before the ALJ was, therefore, whether or not claimant was disabled between 1980 and 1981 within the meaning of the Social Security Act.

The medical evidence submitted by claimant consisted of (1) a discharge summary from his first psychiatric hospitalization in 1970 at which time he was diagnosed as having a "schizophrenic reaction, undifferentiated type with paranoid features" (Tr. 123); (2) a discharge summary from his second psychiatric hospitalization from June through August of 1982 at which time he was given the diagnosis of "schizophrenic disorder, paranoid type" and was described as oriented in all spheres and cooperative although suffering from ideas of reference and persecution with loosened and accelerated associations, impaired insight and judgment, superficial memory and blunted affect (Tr. 120); (3) a report from Dr. Julio Frank, who was apparently involved in Mr. Carrillo's treatment during his 1982 hospitalization, in which he described claimant as disorganized, with episodes of agitation, hallucinations, reference ideas and very superficial contact with reality and a diagnosis of "undifferentiated type of schizophrenia" (Tr. 117); and (4) two reports from claimant's treating psychiatrist, Dr. Quintero, dated September 2 and 20, 1982, who certified that he had been caring for claimant since 1969 and diagnosed him as "schizophrenic, paranoid type, moderately severe, chronic" with a poor prognosis. He found claimant to be suffering from paranoid delusions with accompanying impaired judgment, some depression related to exaggerated religious preoccupation, greatly diminished attention and concentration and very poor ability to interact with strangers. Additionally Dr. Quintero stated that from 1980 to 1982 claimant's periods of serious psychiatric decompensation had been more prolonged resulting in his second hospitalization. (Tr. 125 and 127).

Both claimant and his treating psychiatrist testified at the hearing in January 1983 before the ALJ. Claimant stated that he stopped working in 1980 because he "felt ill ... hear[d] voices and ... was feeling nervous." (Tr. 27). He claimed he could not work because his mind "goes" and he starts to think about one thought constantly. He occupies himself by staying at home and thinking about his wife. (Tr. 30 and 35). Although he does wash, dress and feed himself, he testified that he does no housework, does not watch TV, listen to the radio nor read newspapers and does not visit with others (Tr. 31–32).

Dr. Quintero testified (Tr. 35–49) that while claimant's symptoms vary in intensity he is always paranoic and that hospitalization is necessary when the medications do not work and there are threats of physical aggression. In his opinion there is a constant residual of symptomatology despite remissions and exacerbations. He also testified that in his opinion claimant's condition has gotten worse over his ten-year or so course of treatment, with the periods of disorganization becoming longer and more frequent. In regard to claimant's work history Dr. Quintero testified that Mr. Carrillo had worked only erratically and inefficiently between 1970 and 1982, with a pattern of developing paranoid suspicions about his co-workers within a few weeks of starting a new job. According to Dr. Quintero, "... as soon as there are more demands he starts disorganizing himself and he starts having delusions about people or work." (Tr. 22–23). When asked by the ALJ whether he believed claimant could not work, he replied, "No, no. If that has taken such a long time, what was

tried and was tried initially was to try to reintegrate him in the functioning of work. What I believe is that he has not be (sic) able to establish a relationship in a job of security and permanency. Because he begins to disorganize himself easily. I believe that has been progressing. The strength that he has to tolerate some incidents, I believe is less..." (T. 48–49).

The ALJ reviewed this evidence and concluded that while claimant suffered from a "moderate mental condition" he did not have a severe impairment which significantly limited his ability to work. Tracking the language for a "listed" functional psychotic disorder, *see* 20 C.F.R. Appendix 1 § 12.03, the ALJ noted in his opinion accompanying his findings that there was no evidence of a marked restriction of activities, constriction of interests, deterioration in personal habits or seriously impaired ability to relate to other people. Rather, he found claimant to be friendly, cooperative, oriented, coherent and alert. The district court affirmed in a brief order citing Dr. Quintero's testimony quoted above concerning claimant's inability to establish himself in a job with any permanence. On appeal claimant contends that (1) the ALJ erred in disregarding uncontroverted medical evidence and in basing his decision on his own observations and (2) that if the Secretary was in doubt she should have ordered a consultative examination pursuant to 20 C.F.R. § 404.1517(a).

■ Although the Act does not define "severe impairment," the regulations indicate that it comprehends a disorder that "significantly limit[s] ... physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1520(c). *See also* 20 C.F.R. § 404.1521(a). Basic work activities are the abilities and aptitude necessary to do most jobs. 20 C.F.R. § 404.1521(b). For one such as Mr. Carrillo, who suffers a mental disorder, the regulations suggest as prerequisite to working the ability to understand, carry out and remember simple instructions, to use sound judgment, to respond appropriately to supervision, co-workers and usual work situations and to deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(2)–(6).

■ Dr. Quintero's testimony suggests that claimant indeed was significantly limited in these areas although the record is practically devoid of any direct evidence for the specific relevant time period of 1980–1981. Dr. Quintero testified that claimant is chronically paranoic and prone to physical aggression, *and* that this condition has worsened in general since 1969 when treatment began and specifically over the two years prior to the hearing. He further indicated that claimant's attempts at employment were characterized by paranoid reactions to his co-workers. While this evidence lacks precision and focus in light of the narrow relevant time period, it nevertheless was the *only* medical evidence before the ALJ on this point. And, as we have said before, *see Suarez v. Secretary of Health and Human Services*, 740 F.2d 1 (1st Cir.1984), the ALJ is simply not at liberty to substitute his own impression of an individual's health for uncontroverted medical opinion. Nor do we think that Dr. Quintero's ambiguous statement concerning claimant's potential employability, relied on by the District Court, constitutes substantial evidence upon which to conclude that Mr. Carrillo had the capacity in 1980 or 1981 to continue in his field of employment, let alone to support the conclusion drawn by the ALJ that he was not severely impaired. *See Currier v. Secretary of Health, Education & Welfare*, 612 F.2d 594, 597 (1st Cir.1980). *See generally, Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion). Given claimant's unchallenged diagnosis of chronic schizophrenia coupled with the uncontradicted testimony concerning his degeneration in recent years and the evidence of gross interference with his interpersonal relations, the ALJ's finding of no severe impairment is not supported by substantial evidence. We thus hold that the Secretary erred in reaching this conclusion and remand the case for a continuation of the disability evaluation as set out in 20 C.F.R. § 404.1520. *See Goodermote v. Secretary*

*of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).[1] On remand the Secretary may admit as much additional evidence as is necessary to arrive at a reasonable determination of the extent of claimant's impairment. As claimant suggests in his brief, if the Secretary is doubtful as to the severity of his disorder the appropriate course is to request a consultative evaluation, *see* 20 C.F.R. § 404.1517, not to rely on the lay impressions of the ALJ. While claimant of course bears the burden of proof on the issue of disability, *Small v. Califano*, 565 F.2d 797, 800 (1st Cir.1977), the Secretary nonetheless retains a certain obligation to develop an adequate record from which a reasonable conclusion can be drawn. *See Miranda v. Secretary of Health, Education and Welfare*, 514 F.2d 996, 998 (1st Cir.1975). The failure to do so in this instance constitutes the requisite "good cause" for remand pursuant to 42 U.S.C. § 405(g).

The judgment of the district court is reversed and the case is remanded with instructions to remand to the Secretary for further proceedings.

---

**1.** Although claimant does not raise the issue, we note that the language used by the ALJ in the opinion accompanying his findings suggests that he may have erroneously applied the "Listed" standard for functional psychotic disorder rather than the more commodious severity test. *Compare* 20 C.F.R. Appendix I § 12.03 with 20 C.F.R. § 404.1521. *See Arroyo v. Secretary of Health and Human Services*, 558 F.Supp. 482 (D.P.R.1983).