Ron Jay **LICHTER**, Plaintiff-Appellant,

v.

Otis R. **BOWEN**, M.D., Secretary of Health and Human Services, Defendant-Appellee.

No. 86–1508.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1986.

Decided March 12, 1987.

As Amended April 1, 1987.

---

Dorie Budlow, Fredrick J. Daley, Ltd., Chicago, Ill., for plaintiff-appellant.

Donald McDougall, Asst. Regional Atty., Office of Regional Council, Dept. of HHS, Chicago, Ill., for defendant-appellee.

Before CUDAHY, EASTERBROOK and RIPPLE, Circuit Judges.

CUDAHY, Circuit Judge.

The plaintiff, Ronald J. Lichter, appeals from an award of social security disability benefits that began on June 20, 1983; Lichter claims that he was entitled to receive benefits beginning February 21, 1981. We reject Lichter's claim that the Social Security Disability Reform Act of 1984 entitles him to a redetermination of his eligibility. We find, however, that the administrative law judge improperly determined the date of the onset of Lichter's disability, and we remand for a redetermination of the onset date.

I.

Lichter first filed an application for disability benefits on July 14, 1981, claiming that he had been unable to work since February 12, 1981 due to a fractured right femur sustained in a hit-and-run automobile accident. His application was denied both initially and upon reconsideration. On December 29, 1982, his application was again denied following a hearing and *de novo* consideration by an administrative law judge ("ALJ"). Lichter requested review by the Social Security Administration Appeals Council; his request was denied on March 28, 1983.

Lichter filed a civil action in federal district court. The district court remanded the case to the Secretary of Health and Human Services (the "Secretary") to consider new evidence that Lichter introduced to establish that he suffered from a disabling mental impairment. Pursuant to that remand order and a remand order of the Appeals Council, a second hearing was held on March 16, 1984 before an ALJ. Lichter appeared personally at the hearing and was represented by an attorney. The ALJ issued a recommended decision on July 7, 1984 which found that Lichter was under a disability as defined in the Social Security Act due to a severe mental impairment but that he had been disabled only since June 20, 1983 and not since February 21, 1981 as claimed by Lichter. On September 26, 1984, the Appeals Council approved the ALJ's decision.

Lichter appealed in federal district court the Secretary's determination of the onset date of his disability. On November 27, 1985, the district court granted summary judgment in favor of the Secretary by adopting the magistrate's report and recommendation. Lichter filed a motion for reconsideration in the district court in which he claimed that he was entitled to a redetermination of his eligibility under the standards adopted pursuant to the Social Security Disability Benefits Reform Act of 1984. 98 Pub.L. No. 98–460, 98 Stat. 1794 (codified in scattered sections of 42 U.S.C.). On February 26, 1986, the district court denied Lichter's motion, finding that Lichter was not eligible for a redetermination.

## II.

■ Lichter argues that section 5 of the Social Security Disability Benefits Reform Act of 1984 (the "Reform Act" or the "Act") entitles him to a redetermination of the onset date of his disability under the new regulations adopted pursuant to the Act. We agree with the district court that Lichter "is not eligible for redetermination because his was an initial determination of ineligibility, rather than a continuing eligibility review, and was made on September 26, 1984, prior to the enactment of the Act establishing the moratorium." *Lichter v. Heckler*, No. 83–C–3521 (N.D.Ill. Feb. 25,

1986) (order denying plaintiff's motion for reconsideration).

Section 5 of the Reform Act is entitled "Moratorium on Mental Impairment Reviews" and orders the Secretary to publish within 120 days of the enactment of the Act new regulations that are "designed to realistically evaluate the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive workplace environment." 98 Stat. at 1801, *reprinted in* 42 U.S.C. § 421 note at 767 (Supp. III 1985). Section 5 also contains explicit directions for the retroactive application of those new regulations. Paragraph (b)(1) and clause two of paragraph (c)(1) apply only to cases involving a possible termination of benefits ("continuing benefit reviews"), that is, where the Secretary has previously found a claimant to be mentally disabled and is reviewing that finding for continued eligibility.[1] These provisions, therefore, do not apply to Lichter because the determination in his case was of initial, rather than continuing, eligibility.

A separate provision of section 5 governs the retroactive application of the revised regulations to claimants such as Lichter who are seeking an initial eligibility determination. The first clause of paragraph (c)(1) provides for a redetermination of eligibility under the new criteria for anyone found to be not disabled by reason of a

---

1. Paragraph (b)(1) provides:

Until such time as revised criteria have been established by regulation in accordance with subsection (a), no continuing eligibility review shall be carried out under section 221(i) of the Social Security Act, or under the corresponding requirements established for disability determinations and reviews under title XVI of such Act, with respect to any individual previously determined to be under a disability by reason of a mental impairment, if—

(A) no initial decision on such review has been rendered with respect to such individual prior to the date of the enactment of this Act, or

(B) an initial decision on such review was rendered with respect to such individual prior to the date of the enactment of this Act but a timely appeal from such decision was filed or was pending on or after June 7, 1983.

For purposes of this paragraph and subsection (c)(1) the term "continuing eligibility review," when used to refer to a review of a previous determination of disability, includes any reconsideration of or hearing on the initial decision rendered in such review as well as such initial decision itself, and any review by the Appeals Council of the hearing decision.

98 Stat. at 1801, *reprinted in* 42 U.S.C. § 421 note at 767 (Supp. III 1985).

Paragraph (c)(1) provides in relevant part: [A]ny determination that an individual is not under a disability by reason of a mental impairment made under or in accordance with title II or XVI of such Act in a reconsideration of, hearing on, review by the Appeals Council of, or judicial review of a decision rendered in any continuing eligibility review to which subsection (b)(1) applies, shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria. *Id.* at 1801–02.

mental impairment where the initial disability determination or reconsideration of or hearing on the initial determination was made or held after the date of the enactment of the Act and prior to the date on which the revised criteria were established by regulation.[2] The Reform Act was enacted on October 9, 1984. The Secretary's determination of the onset date of Lichter's disability became final on September 26, 1984, when the Appeals Council approved the ALJ's decision. Because the decision became final prior to the enactment of the Reform Act, Lichter is not eligible for a redetermination under the first clause of paragraph (c)(1).

Finally, paragraph (c)(3) of section 5 is a "catch-all" provision applicable both to claimants who were denied benefits in an initial determination and to claimants whose benefits were terminated.[3] Where a denial or termination of benefits occurred between March 1, 1981 and October 9, 1985 (one year after the date of enactment), the claimant may reapply for benefits. Both parties recognize that Lichter was entitled to reapply for benefits pursuant to paragraph (c)(3) and have his claim evaluated under the new regulations. Lichter, however, did not reapply and does not seek a redetermination under paragraph (c)(3). The reason for this seems clear. Benefits awarded under paragraph (c)(3) are limited to one year prior to the date of reapplication.[4] Because the earliest possible reapplication date was October 9, 1984 (the date of enactment), Lichter at best could have received benefits only from October 9, 1983. He already had been awarded benefits by the ALJ beginning June 20, 1983. Thus, Lichter had nothing to gain from a redetermination under paragraph (c)(3) and is arguing for a redetermination pursuant only to paragraphs (b)(1) and (c)(1).

Lichter challenges the interpretation of paragraphs (b)(1) and (c)(1) outlined above. Despite the clear wording of the statute to the contrary, he argues that the legislative history behind the Reform Act indicates that the Act treats identically initial determinations and continuing eligibility reviews, and that he is entitled to a redetermination under paragraphs (b)(1) and (c)(1). For support, Lichter relies on the House report that accompanied the bill that became the Reform Act. H.R.Rep. No. 618, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3038.

---

**2.** Paragraph (c)(1) provides in relevant part:

> Any initial determination that an individual is not under a disability by reason of a mental impairment and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of or hearing on an initial disability determination, made or held under title II or XVI of the Social Security Act after the date of the enactment of this Act and prior to the date on which revised criteria are established by regulation in accordance with subsection (a) ... shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

98 Stat. at 1801–02, *reprinted in* 42 U.S.C. § 421 note at 767 (Supp. III 1985). Further, paragraph (c)(2) provides that if following a redetermination under paragraph (c)(1) an individual is found to be under a disability, "such redetermination shall be applied as though it had been made at the time of such prior action." *Id.* at 1802.

**3.** Paragraph (c)(3) provides:

> Any individual with a mental impairment who was found to be not disabled pursuant to an initial disability determination or a continuing eligibility review between March 1, 1981, and the date of the enactment of this Act, and who reapplies for benefits under title II or XVI of the Social Security Act, may be *determined to be under a disability during the period considered in the most recent prior determination.* Any reapplication under this paragraph must be filed within one year after the date of the enactment of this Act, and benefits payable as a result of the preceding sentence shall be paid only on the basis of the reapplication.

98 Stat. at 1802, *reprinted in* 42 U.S.C. § 421 note at 767 (Supp. III 1985).

**4.** Paragraph (c)(3) states that benefits awarded as a result of reapplication "shall be paid only on the basis of the reapplication." 98 Stat. at 1802, *reprinted in* 42 U.S.C. § 421 note at 767 (Supp. III 1985). Payment of benefits on any application for social security disability benefits is limited to one year prior to the date of application. Benefits are not payable until after the claimant has been both insured and disabled for five months, and the five month waiting period cannot begin before seventeen months prior to the application date. 20 C.F.R. § 404.315(d) (1985).

In fact, the House report's discussion of the "purpose and scope" of the Reform Act supports the Act's differing treatment of the two groups of claimants. The report states that the Act addressed Congressional concern about the administration of the social security disability insurance program, *"primarily* because of the numbers of beneficiaries *whose benefits have been terminated."* *Id.* at 3039 (emphasis added). The report further stated that "the committee believes that the process over the last several years has resulted in erroneous *termination of benefits* for at least some people." *Id.* (emphasis added). The Act provided for reform "in the standards for determining eligibility for disability benefits, both for new applicants *and more particularly for current beneficiaries being reviewed."* *Id.* (emphasis added). Moreover, other courts interpreting the Reform Act have concluded, as do we, that "the revised criteria are inapplicable to a claim of mental impairment in which the initial determination, reconsideration of, and hearing on the initial disability determination were made or held prior to the Act's enactment." *Mazzola v. Secretary of Health & Human Servs.,* 795 F.2d 222, 225 (1st Cir.1986); *see also Cook v. Heckler,* 783 F.2d 1168, 1171–72 & 1172 n. 11 (4th Cir.1986); *Conley v. Bowen,* 781 F.2d 143, 147 (8th Cir.1986); *Quiles v. Secretary of Health & Human Servs.,* 624 F.Supp. 909, 910 (D.P.R.1985).

### III.

The Secretary's determination that Lichter is disabled and entitled to benefits is not challenged on this appeal. The ALJ found that Lichter was suffering from "severe psychiatric problems diagnosed as a histrionic personality" which "prevented him from concentrating on workrelated tasks; relating to co-workers or supervisors or understanding and retaining simple instruc-

tions." *In re Lichter,* at 5 (Dep't HHS July 17, 1984) ("recommended decision of ALJ"), *reprinted in* Appendix to Appellant's Brief ("App.") at 6. The issue before us is the ALJ's finding that the onset date of Lichter's disability is June 20, 1983. We agree with Lichter that the ALJ did not properly determine the onset date of his disability.

Social Security Ruling 83–20 ("SSR 83–20") describes how the onset date of a disability should be determined. SSR 83–20, at 109 (C.E.1983).[5] SSR 83–20's explicit purpose is "[t]o state the policy and describe the relevant evidence to be considered when establishing the onset date of disability." *Id.* at 109. It states that the onset date for disabilities of traumatic origin is the date of the injury. In disabilities of nontraumatic origin, three factors are to be considered in determining the onset date: the applicant's allegations, work history, and medical and other evidence. SSR 83–20 describes the date alleged by the applicant as "[t]he starting point" in determining the onset date, *id.* at 110; that date "should be used if it is consistent with all the evidence available," *id.* at 111. Regarding work history, SSR 83–20 states that "[t]he day the impairment caused the individual to stop work is frequently of great significance in selecting the proper onset date." *Id.* at 110. Medical evidence is described as "the primary element in the onset determination," *id.*, and the date chosen "can never be inconsistent with the medical evidence of record," *id.* at 111. In cases where there is no medical evidence as to the precise onset date, but where the disabling impairment seems to have occurred prior to the date of the first recorded medical examination, the ALJ "should call on the services of a medical advisor" to help in making the necessary inferences. *Id.* Where no reasonable inference is possible based on the available evidence, "it

---

**5.** Once published, a ruling is binding on all components of the Social Security Administration in accordance with section 422.408 of Social Security Regulations No. 22 (20 CFR Part 422). Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be superseded, modified or revoked by later legislation, regulations, court decisions, or rulings.

Social Security Rulings iii (C.E.1983), *quoted in Heckler v. Edwards,* 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 1534, n. 3, 79 L.Ed.2d 878 (1984).

may be necessary to explore other sources of documentation. Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.* at 111–12.

Although Lichter never specifically cited SSR 83–20 prior to this appeal, he consistently challenged the ALJ's determination of the onset date before the Appeals Council, the district court and this court on the ground that the ALJ's determination is inconsistent with the claimant's testimony, his work history and the medical and other evidence—the same factors to be considered under SSR 83–20. Further, the Secretary cites and relies on the ruling, stating that "SSR 83–20 ... relates specifically to onset date...." Appellee's Brief at 24.

Neither the ALJ nor the district court mentioned SSR 83–20, nor did they employ an analysis similar to that set forth in the ruling. Rather, the ALJ relied only on the lack of evidence to support an earlier date: "[T]here is no evidence to document the severity of [Lichter's] psychiatric illness prior to the report of Mr. Liberman dated June 20, 1983. The claimant had not sought professional help prior to that month and no consultative evaluations of his mental and emotional status were performed." Recommended decision of ALJ at 4–5. Similarly, the magistrate's report that was adopted by the district court recommended affirming the ALJ's selection of June 20, 1983 as the onset date, stating that "not one examining physician has opined that the claimant has been suffering from a severe medical impairment since February 12, 1981." *Lichter v. Heckler,* No. 83–C–7427, at SA–13 (Sept. 10, 1985). The magistrate also stated that the claimant bears the burden of proving the onset date and must, among other things, provide medical evidence to support a specific onset date. *Id.*

■ Lichter's failure to produce a medical report that cited February 12, 1981 as the onset date of his disability seems to

have proven fatal to his claim. Yet, had the ALJ applied SSR 83–20, the lack of this particular evidence alone would not have been determinative. If the onset date alleged by Lichter (February 12, 1981) was consistent with the medical and other evidence available, SSR 83–20 would have required the ALJ to adopt that date. If an onset date of February 12, 1981 was not consistent with the other evidence and no alternative date was clear from the evidence, SSR 83–20 would have directed the ALJ to obtain additional medical and nonmedical evidence. This approach is supported by a recent opinion by the Ninth Circuit in which the court stated that "the critical date is the date of *onset* of disability, *not* the date of diagnosis." *Swanson v. Secretary of Health & Human Servs.,* 763 F.2d 1061, 1065 (9th Cir.1985) (emphasis in original). Significantly, the court recognized that SSR 83–20 would not permit an ALJ to rely on the first date of diagnosis solely because no earlier diagnosis date was available:

> Where, for example, the symptoms of disability and available medical evidence are consistent with a disability diagnosed only at a much later date the Secretary would not be substantially justified in relying on the date of diagnosis as the date of disability. Indeed, if the Secretary chose to rely on the date of diagnosis in such circumstances she would be violating her own regulations. Social Security Ruling 83–20 (Jan.1983) (date alleged by individual should be used as onset date if it is consistent with all available evidence).

*Id.* at 1066 n. 2.

■ A review of the evidence in the record reveals that Lichter's alleged onset date of February 12, 1981 is not clearly inconsistent with the other available evidence. Lichter testified at the hearing before the ALJ that his mental disability began at the time of the automobile accident. The nature of Lichter's testimony concerning the accident and the physical injuries he suffered tends to support the alleged onset date. Lichter's work history also supports an onset date of February 12, 1981; the

ALJ found that Lichter had not engaged in substantial gainful activity since February 12, 1981. Social worker Tom Goldenson testified on Lichter's behalf at the hearing. Although Goldenson has known Lichter only since 1984, he testified that he believed that Lichter's mental disability "is due very much to his accident.... His mental problem right now is the problem but I believe it is due to his traumatic accident that he had a couple of years ago." Transcript at 14 (Mar. 16, 1984), *reprinted in* App. at 23.

Lichter introduced before the ALJ a medical evaluation by a psychologist, Dr. David Liberman, dated June 20, 1983. The ALJ refers to this report as the first evidence of the severity of Lichter's mental disability and adopts the date of the report as the onset date. Although Dr. Liberman's report does not expressly identify a date on which he believes Lichter first became disabled, the report does indicate that Lichter's mental illness stems from the automobile accident of February 12, 1981 and is of traumatic origin:

> Mr. Lichter had been the victim of a hit-and-run accident in February of 1981 and he appears to have sustained serious psychological as well as physical damage from the experience. He reports that he has been unable to work, maintain a relationship with family or friends or to come to terms with the trauma of the event. I have met with Mr. Lichter for five sessions. It is my impression that he is suffering from a severe traumatic neurosis which has effected [sic] the subject's thinking processes, his physical functions and his emotional stability.
> ... [He is] preoccup[ied] with his accident and with the events subsequent to it....
> I believe that Mr. Lichter has experienced a strong emotional shock which has caused him to regress in both his level of emotional maturity and in his ability to function.... It appears that the psychological stress of the accident has taxed Mr. Lichter beyond his emotional resources. He has suffered a very difficult trauma and is now able to function at only the minimal levels.

Plaintiff's Motion to Remand, Exhibit A. The ALJ had Lichter examined by two additional physicians. Dr. Melvin Nudleman, a psychiatrist, noted in his report that Lichter constantly talked about the automobile accident and the injury to his leg. Dr. Nudleman concluded, "[Lichter] has a marked anxiety disorder and he also has an obsessive ideation which solely is about his injury, his disability, and his need to get immediate help from Social Security." App. at 101. Dr. Nudleman recommended that the ALJ order a more detailed psychological examination and a detailed social history from close family members. Dr. Nicholas Kokinis, a psychologist, reported that Lichter was borderline to mildly retarded and that this mental impairment was related to Lichter's emotional illness.

We find that the ALJ's determination of the onset date might have been different had he applied SSR 83–20. We therefore vacate and remand the judgment to allow a consideration of the possible application of SSR 83–20 to Lichter's claim.

### IV.

Lichter also argues that the ALJ improperly failed to consider the combined severity of his mental and physical impairments. *See Johnson v. Heckler*, 769 F.2d 1202 (7th Cir.1985). Yet, as the Secretary points out, Lichter "does not suggest how the 'combined' assessment was to be made; because there was no evidence of one of the impairments prior to June 20, 1983, there was only one impairment then—the leg." Appellee's Brief at 25. If, however, the Secretary on remand finds that Lichter's mental impairment existed to some degree at a time when Lichter was still suffering some impairment in his leg, the combined effect of the impairments should be considered to the extent it might bear on the onset date of disability.

### V.

For the reasons set forth above, we vacate the judgment of the district court and the Secretary's determination of the onset date and remand the case to the district

court. Further, we direct the district court to remand the case to the Secretary for a redetermination of the onset date of Lichter's disability in accordance with SSR 83–20.

VACATED AND REMANDED.