**Norma Jean MITCHELL, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services,\* Appellee.**

No. 86–1582.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1987.

Decided Aug. 31, 1987.

Frederick S. Spencer, Mountain Home, Ark., for appellant.

Karen Behner, Dallas, Tex., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

PER CURIAM.

Norma Jean Mitchell appeals the district court's order affirming the decision of the Secretary of Health and Human Services denying her claim for disability and Social Security Disability Insurance benefits. We reverse and remand with direction to remand the proceedings to the Secretary for further hearing.

Mitchell is a fifty-one-year old female, five feet zero inches tall and weighing seventy-nine pounds. She has a twelfth grade education. She has not engaged in substantial gainful activity since March 4, 1979, her alleged onset date of disability. She last met the insured status requirements of the Social Security Act on December 31, 1981. Mitchell filed her second application for disability benefits on April 2, 1984.[1] She listed her disabling conditions as "stroke, pulmonary infection, extreme weakness, back trouble, headaches." She complained of extreme weight loss, lack of energy, and headache and back pain so severe that she was unable to work. The Social Security interviewer described her as "very small and frail looking."

Mitchell was represented by counsel at the hearing before the ALJ. She testified that she has had severe headaches every month, which sometimes lasted for three or four days at a time. Mitchell stated that normally she is able to control the pain through medication; however, at least three times a year she requires hospitalization for dehydration resulting from in-

---

\* Otis R. Bowen has succeeded Margaret M. Heckler, originally named as appellee in this case, as Secretary of Health and Human Services, and the court accordingly, on its own motion, substitutes him as party appellee. See FRAP 43(c)(1).

1. Mitchell had filed an earlier (unsuccessful) claim for disability benefits on May 18, 1977. After reviewing the earlier claim, the Adminis-

trative Law Judge (ALJ) ruled that the evidence did not justify reopening the final decision of the Secretary. In his Opinion, the ALJ stated that the scope of potential relief was, therefore, limited to the period between March 28, 1978, and December 31, 1981—that being the time between the ALJ's decision on the first claim and the expiration of Mitchell's insured status.

cessant vomiting caused by the headaches. Accompanying these headache spells is a history of weight loss of greater than ten per cent of her body weight. Mitchell also complained of intense back pain, which kept her from sitting in one place for more than a half hour at a time and usually required hot baths on a daily basis. Most of Mitchell's testimony related only to her then current condition.

Two other individuals testified at Mitchell's hearing. Her husband testified that, despite Mitchell's efforts, she was virtually incapable of performing any household chore; could not ride in the car for long periods of time; and no longer danced with him or socialized with any of their friends. Mr. Mitchell described his wife as extremely nervous and unable to sleep at night. Mrs. Pauline Dorothy Rice also testified at the hearing. Mrs. Rice lived with the Mitchells for six months in 1983. During that time, she took over the household chores in exchange for free room and board. Rice testified that Mitchell would have headaches and "[s]he'd have to go to bed. And she'd throw up, and she'd just be very sick...." She described Mitchell as slow in moving, constantly in pain, and continually taking medication.

Mitchell also submitted numerous medical reports dating back to November 1972. The medical documentation was, however, somewhat conflicting. The record indicates that Mrs. Mitchell suffered a subarachnoid (brain) hemorrhage in 1972, and a back injury in 1980. There is evidence, though, that the headaches she now complains of preceded the hemorrhage.[2] Hospital records show that, since 1972, she has indeed been hospitalized an average of three times a year for dehydration caused by the incessant vomiting accompanying the headache spells. From all accounts, the severity of the headaches has increased steadily over the last several years. Nevertheless, the record contains at least one medical report suggesting that Mitchell's condition is improved markedly by medication. The medical records also indi-

cate that in 1981 Mitchell was suffering from an old back injury (probably in 1980) accompanied by a number of osteoporotic skeletal changes. An opinion of the extent of the injury and an analysis of what pain, if any, such an injury normally causes is not contained in the record.

The ALJ concluded that Mitchell "failed to produce sufficient medical documentation or other evidence to establish that she was 'disabled' within the meaning of the Social Security Act ... on or before December 31, 1981...." In reaching his decision, the ALJ applied the sequential analysis set out in Social Security Regulation No. 4. The ALJ found that during the relevant time periods, Mitchell did not have "any condition or combination of conditions that was of such severity as to reasonably be expected to preclude her from performing her past sedentary work activity as a personnel clerk or clerk-typist." He found that although recent medical evidence on the severity of headaches and back pain was "significant," there was no evidence that those conditions were present at the time Mitchell's insured status expired. Finally, the ALJ held that Mitchell's "complaints and allegations as to the periods of time prior to December 31, 1981, are found to lack credibility when viewed against all of the evidence." He did not, however, indicate the evidence to which he referred.

The district court affirmed the ALJ's dismissal of Mitchell's complaint, finding that it could "not say that the Secretary's decision [was] not supported by substantial evidence." The court wrote that "one could reasonably conclude that the Plaintiff was not disabled prior to the expiration of her insured status, although it is clear that she did indeed have some medical problems at that time." Accordingly, the court affirmed the Secretary's decision and dismissed Mitchell's complaint.

On appeal, Mitchell argues that it was reversible error for the ALJ to (1) not indicate explicitly what evidence he relied

---

**2.** It is unclear whether these headaches—often characterized as "migraine" headaches—are residual effects from the hemorrhage or are, in fact, more commonly-experienced migraine headaches.

on in concluding that Mitchell's subjective complaints of pain were not credible; (2) rely solely on the "grid" regulations and to refuse to call a vocational expert; and (3) reject medical judgments regarding Mitchell's ability to engage in gainful employment in the absence of any contradictory medical evaluations.

In reviewing a denial of social security benefits, this court must determine whether substantial evidence on the record as a whole supports the Secretary's decision. 42 U.S.C. § 405(g); *Bastian v. Schweiker*, 712 F.2d 1278, 1280 (8th Cir.1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Heckler*, 744 F.2d 1333, 1337 (8th Cir. 1984). Even though the evidence presented may conflict, this court's review of the final administrative decision is limited to deciding whether it is supported by substantial evidence. *Wilson v. Schweiker*, 681 F.2d 526, 527 (8th Cir.1982).

The claimant bears the initial burden of proving that he is unable to perform his past relevant work. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982). "In a case where there exists conflicting allegations and claims, credibility findings in the first instance are for the ALJ." *Smith v. Heckler*, 760 F.2d 184, 187 (8th Cir.1985). If inconsistencies exist in the record, the ALJ may disbelieve the claimant's subjective testimony of pain. *Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir.1983). The ALJ may not, however, reject subjective testimony solely because the medical evidence does not fully support the claimant's allegations. *O'Leary v. Schweiker*, 710 F.2d 1334, 1342 (8th Cir.1983). "Rather, the ALJ must consider all of the evidence and must attempt either to reconcile the medical reports ... or ... direct interrogatories to each physician to obtain a more substantial opinion as to [the claimant's] capabilities." *Id.* This requirement ensures that the ALJ fulfills the duty to develop the record fully and fairly, *Brissette v. Heckler*, 730 F.2d 548, 549, (8th Cir.1984), even when the claimant was represented by counsel. *Brown v. Heckler*, 786 F.2d 870,

872 (8th Cir.1986); *Thorne v. Califano*, 607 F.2d 218, 219 n. 3 (8th Cir.1979).

Mitchell claims that no substantial evidence existed for the ALJ's determination that her subjective complaints of pain lacked credibility. It is true that the record, as it now exists, is replete with documentation of Mitchell's illnesses. The difficulty with Mitchell's evidence, however, is that it seldom relates directly to the relevant time periods. The majority of medical reports submitted to the ALJ indicated that Mitchell suffered at least two injuries that, possibly, could cause the type of pain of which she now complains. No less than three treating physicians diagnosed Mitchell as having suffered from a subarachnoid hemorrhage in 1971 or 1972. Similarly, it appears beyond dispute that Mitchell injured her lower back in 1980, and that the damage remained relatively unchanged, at least until the end of 1983.

As noted, though, despite available relief being limited to the years 1978 through 1981, all of the testimony at the administrative hearing centered on Mitchell's current status, rather than on her state of health during the disputed time. Neither the ALJ nor counsel attempted adequately to focus the proceeding on the question of *when* Mitchell's condition became disabling. We are, quite frankly, at a loss to understand why such a line of inquiry was not strenuously pursued, especially in light of our recognition that "medical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status ... bear[s] upon the severity of the claimant's condition before the expiration of ... her insured status." *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984). We are not unsympathetic to the ALJ's difficulties in this case. Nonetheless, in light of this court's decision in *Thorne v. Califano*, we are constrained to hold that the ALJ breached his duty to fully and fairly develop the record. 607 F.2d at 219, n. 3.

Like the case at bar, *Thorne* involved a situation where the majority of medical evidence submitted related to periods of time following the expiration of Thorne's insured status. This court, in reviewing the

record, wrote that "[t]he difficulty is that the medical testimony is deficient as to any corroboration of plaintiff's condition in 1975, the disputed year of disability." 607 F.2d at 219. We remanded the proceedings to the lower court, holding that:

> [i]n this case there is no opinion evidence as to whether Mrs. Thorne's condition made her unemployable in 1975. *Neither counsel nor the ALJ made any effort to ascertain from the medical witnesses the disability status of the claimant in 1975. Instead, the AJL [sic] relied upon present medical testimony and his own personal opinion. We deem the record incomplete.* Under the circumstances we hold the case should be remanded in order to have the views of Mrs. Thorne's treating physician more fully developed.

*Id.* at 220 (emphasis added). *See also Brissette,* 730 F.2d at 549. Here, as in *Thorne,* it is not possible to determine from the record whether Mitchell was disabled before her insured status expired. In light of the substantial medical and eyewitness evidence documenting her current difficulties, the ALJ should have focused the inquiry on the issue of whether Mitchell's disabilities, if any, existed between March 28, 1978, and December 31, 1981—that being the time period during which she was eligible for disability benefits.

Accordingly, we reverse the decision of the district court and direct it to remand the proceedings to the Secretary to hold an additional hearing focusing on the considerations herein outlined.