Walter L. MORGAN,
Plaintiff–Appellant,

v.

Louis W. SULLIVAN, Secretary of
Health and Human Services,*
Defendant–Appellee.

No. 88–4075.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 28, 1989.

Decided July 13, 1990.

---

* Louis W. Sullivan is substituted for his predecessor Otis R. Bowen, Secretary of Health and Human Services, pursuant to Fed.R.App.P. 43(c)(1).

Ralph Wilborn, Eugene, Or., for plaintiff-appellant.

Richard H. Wetmore, Asst. Regional Counsel, Dept. of Health and Human Services, Kathryn A. Warma, Asst. U.S. Atty., Seattle, Wash., for defendant-appellee.

Before FERGUSON, BRUNETTI and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

Walter Morgan appeals from the district court's decision upholding the determination of the Secretary of Health and Human Services ("Secretary") that he is not entitled to disability insurance benefits. We affirm.

Morgan was born October 29, 1924, and partially completed the third-grade. His relevant work experience has been as a truck driver and logger, but he has not been gainfully employed since 1977. On August 22, 1984 he applied for disability and Supplemental Security Income ("SSI") insurance benefits, alleging back and heart ailments. The application was denied initially and on reconsideration. Morgan filed for SSI and disability benefits again on August 22, 1984, which were also denied. Morgan appealed. On June 11, 1985, an Administrative Law Judge ("ALJ") found Morgan eligible for SSI benefits as of July 25, 1984, because of subsequent mental impairments, but denied the disability benefits on the grounds that Morgan was not disabled on or before December 31, 1979, the date he was last insured for disability benefit purposes. Morgan appealed the ALJ's determination.

The Appeals Council remanded the case for reconsideration under the Reform Act of 1984. On remand, a different ALJ came to the same decision as the first ALJ. Morgan appealed this decision. The Appeals Council affirmed the award of SSI benefits beginning July 25, 1984 but issued its own decision denying the disability claim. The Appeals Council found the conclusions of Morgan's treating physicians that he was disabled to be inconsistent with the medical evidence, and it made the following findings:

The claimant had the following impairment on and prior to December 31, 1979: status post bilateral hernia repair, but did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4, at any time on or before December 31, 1979.

The claimant had no medically determinable mental impairment at any time on or before December 31, 1979, when he last met the special earnings requirements. The claimant's subjective complaints of pain in his chest, heart, right knee and both hips are credible only to the extent that his history of bilateral hernia repair would have prevented him from performing greater than medium work at any time on or before December 31, 1979.

On the basis of these findings the Appeals Council determined that Morgan was not disabled prior to December 31, 1979, his last insured date, because he was capable of performing his past relevant work as a truck driver. Morgan appeals.

■ In order to obtain disability benefits, Morgan must demonstrate that he was disabled prior to his last insured date. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520. Morgan's last insured date was December 31, 1979. The burden of proof on this issue

is on the claimant. *See Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1278 (9th Cir.1987). The Secretary's decision to deny benefits " 'will be disturbed only if it is not supported by substantial evidence or it is based on legal error.' " *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir.1986)).

■ Morgan claims to have suffered a broken spine in 1960, and he apparently underwent a laminectomy at that time. On December 15, 1977, he was hospitalized for repair of bilateral inguinal hernias. He was discharged on December 22, 1977, after an "unremarkable" stay with a diagnosis of bilateral inguinal hernias (repaired) and acute lumbosacral strain, which was the result of a fall suffered two days prior to admission. Morgan's treating physician, Dr. George Kaspar, stated on an insurance form on January 16, 1978, that Morgan would be disabled until February 10, 1978. A subsequent "certificate of attending physician" indicated that Morgan was released "to perform regular duties" on February 1, 1978. On March 13, 1978, Dr. Kaspar diagnosed Morgan as having parosysmal tachycardia (rapid pulse).

Morgan was hospitalized from December 1, 1978 to December 6, 1978 for chest pain. His heart was monitored continuously, and no acute abnormalities were detected. Dr. Kaspar's discharge diagnosis, dated January 14, 1979, stated "cardiac disease to be ruled out." Subsequent medical examinations were similarly unable to discern any significant cardiac abnormality, and one report concluded that Morgan's condition was "probably psychogenic." [1] However, in an insurance form dated February 20, 1979, Dr. Kaspar claimed that Morgan was totally and indefinitely disabled by his heart condition and hernias. Dr. Kaspar gave no reason for his changed opinion and provided no clinical basis to support this opinion. This opinion was inconsistent with the clinical and laboratory findings in the record,

and the courts below properly disregarded it. *See Coats v. Heckler*, 733 F.2d 1338, 1340 & n. 4 (9th Cir.1984) (weight to be accorded to doctor's statement depends on extent to which it is supported by clinical findings). Morgan's heart problems did not support an inference of disability prior to December 31, 1979.

Morgan's back problems also do not indicate the existence of a compensable disability prior to the last insured date. On December 20, 1977 Morgan was examined and found to have degenerative arthritis, but no acute skeletal abnormality. Although Morgan was observed to have ambulatory difficulty when he was hospitalized in 1977 for his hernias, he had recently suffered a fall, and residual functional capacity assessment forms in 1984 indicated that Morgan was physically "unlimited." No medical evidence has been offered that would indicate that Morgan was precluded from engaging in his work as a truck driver prior to December 31, 1979.

■ Similarly, no evidence has been offered that would support an inference that Morgan became mentally disabled on or before his last insured date, December 31, 1979. The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis. *See Swanson v. Secretary of Health and Human Services*, 763 F.2d 1061, 1065 (9th Cir.1985); Social Security Rule ("SSR") 83–20, Policy Statement ("The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations."). Mental disorders may manifest themselves over a period of time. Consequently, the precise date of onset of a disabling psychological impairment may be difficult, or impossible, to ascertain, and the services of a specialist may in some situations be necessary to infer the onset date.

There are no indications that prior to December 31, 1979, Morgan's mental condition was disabling, and there is nothing in the record supporting the conclusion that

---

1. A consultive examination performed on December 9, 1989 revealed a slight dilation in the right ventricle and mild arteriosclerotic heart disease with possible early angina. [Record 274]

Morgan had any mental impairments prior to 1980. Morgan dates the onset of his disability to 1977 when he underwent his hernia operation. Although his present physical disability may well have been triggered by the hernia operation, the first evidence in the record of a mental impairment occurred in January 1980 when Morgan was treated at a clinic for anxiety and referred to a counselor. In March 1980 a rheumatologist characterized Morgan as "nearly incapacitated by severe depression and chronic anxiety," but concluded that Morgan's pending divorce would be "salutary" to his mental health. On December 9, 1981, a consultive examination revealed a "not quite appropriate response," and concluded that any limitation on Morgan's work ability would be associated with anxiety of a hypochondriacal nature. Finally, examinations performed in September and October 1984 revealed possible schizophrenia, which was confirmed in 1985.

The dissent points to the "significant record evidence documenting his [Morgan's] increasing mental decompensation around December 1979," but we are unable to find anything on the record that would support this conclusion. The record reveals only a progressive deterioration of his mental condition from a state of anxiety in 1980 to full-blown schizophrenia in 1985. However, this does not lead inevitably to the conclusion that he was mentally disabled in 1979.

■ The ALJ did not request the services of a medical examiner to evaluate Morgan's mental disability claim. Social Security Ruling 83–20 (SSR 83–20) does not require an ALJ to call on the services of a medical advisor in every instance in which the onset date of a disability must be inferred. The relevant language of SSR 83–20 provides:

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a

disabling level of severity depends on the informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

The Rule indicates that any inference of disability must have a legitimate medical basis. When no legitimate medical basis can support an inference of disability, no medical advisor is necessary. While Morgan did not suddenly become schizophrenic in 1984, there is no legitimate medical basis to support the inference that Morgan was schizophrenic more than five years prior to his psychiatric diagnosis of schizophrenia.

We realize that the development and manifestation of mental impairment tends to be unpredictable and that inferences must often be made; consequently, it is not possible to articulate a general rule as to when medical assistance will be necessary to infer an onset date. We hold only that in this case the record evidence was insufficient to support an inference that Morgan was mentally disabled on or before December 31, 1979, and that the ALJ did not err in failing to appoint a medical examiner to infer the onset date.

■ We likewise find no error in the development of the administrative record. Morgan was represented by competent counsel, and the record was more than adequate to enable the ALJ to make an informed decision regarding Morgan's eligibility for disability benefits. This is not a case, such as those cited by the dissent, in which the claimant was not represented by counsel, or where the lapse of time was relatively short, or where the record was seriously lacking in critical evidence. There are no unexplained gaps in the record that would constitute grounds for a remand. This is also not a situation in which the medical evidence indicates that the claimant's mental disability commenced

on or about the date of a traumatic injury. *See Lichter v. Bowen,* 814 F.2d 430, 436 (7th Cir.1987) (medical report opined that claimant suffered serious psychological damage in automobile accident).

CONCLUSION

Even though Morgan claims to have suffered from a mental impairment on or before December 31, 1979, his last insured date, the first evidence of a mental impairment in the record was on January 30, 1980, when he was treated at a medical clinic for "extreme anxiety." The evidence on the record, which was adequately developed, was insufficient to support a reasonable inference that Morgan was mentally or physically disabled on or before December 31, 1979.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

There is no dispute that Morgan has suffered from a mental impairment of disabling severity for a number of years; neither party challenges Morgan's entitlement to Title XVI supplemental social security benefits due to psychosis attributed to paranoid schizophrenia. Rather, the central question presented by Morgan's application for Title II disability benefits is whether the onset of Morgan's disability occurred prior to the termination of his insured status on December 31, 1979.

The majority's abbreviated treatment of Morgan's mental disability claim dismisses two separate, yet related, evidentiary errors committed by the Secretary. Ignoring Social Security Ruling 83–20 ("SSR 83–20") which establishes guidelines for determining the onset date of a claimant's disability, as well as the more general administrative obligation to fully develop the record in social security cases, the Secretary erroneously concluded that no medical evidence supported an onset date prior to December 1979. The majority is able to affirm the Secretary only by flatly contradicting the plain language of SSR 83–20.

A.

SSR 83–20 provides specific evidentiary guidelines for ALJs when faced with an issue concerning the onset date of a disability. SSR 83–20 recognizes the necessity of inferring the date of onset in cases where either the nature of the disabling illness, or the lack of medical documentation bearing on the onset of disability in a particular case, precludes precise determination. When onset must be inferred, SSR 83–20 requires an ALJ to "call on the services of a medical advisor." Finally, SSR 83–20 instructs exploration of other sources of documentation—such as family members, friends, and former employers—when reasonable inferences about the progression of the claimed impairment cannot be made from the case record and additional medical evidence is not available.

The relevant language from SSR 83–20 reads:

*Precise Evidence Not Available—Need for Inferences*

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

If reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation.

Information may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition.

*Id., reprinted in* 2 *Social Security Claims: Practice and Procedure* § 21.92 (Callaghan 1988).

This language is not complex, and is susceptible to only one reasonable interpretation. If there is a dispute about the onset of a disabling impairment, the *ALJ's judgment* of how long a disease existed must have a legitimate medical basis. The legitimacy of the judgment depends on the ALJ calling on the services of a medical advisor, and on the ALJ receiving any other available medical evidence. The testimony of the medical advisor and all other available evidence must be heard "before inferences are made" about the onset date.

A straightforward reading of the cited passage of SSR 83–20 shows that the majority has misstated the Ruling when is asserts that "any inference of disability must have a legitimate medical basis." What the Ruling says is that the ALJ's *judgment* about whether such an inference can be made must have a legitimate medical basis. SSR 83–20 is a procedural safeguard to ensure that inferences are not made without the assistance of a medical advisor. The majority concludes from its misreading that "no medical advisor is necessary" when the ALJ decides—by what standard, the majority admits, it cannot explain—that no "medical basis can support an inference of disability." But this is nonsense, for the whole purpose of SSR 83–20 is to require that a medical advisor be heard before the ALJ can be deemed to have a "legitimate medical basis" for a judgment based on inferences. The majority's result not only stands SSR 83–20 on its head; it perpetrates a gross injustice on social security claimants, who would be denied SSR 83–20's procedural protections for a fair determination of their claims.

B.

Unlike broken bones or other physical ailments, mental illness does not generally appear overnight. Likewise, Morgan did not suddenly "become" schizophrenic in 1984. Onset and development of schizophrenia is typically insidious and variable, with behavioral or personality abnormalities presenting themselves slowly over time. *See* 1 *Comprehensive Textbook of Psychiatry* 758–59 (H. Kaplan & B. Sadock 5th ed. 1989) [hereinafter *Textbook of Psychiatry* ]; *Diagnostic and Statistical Manual of Mental Disorders* 190–91 (3d ed. rev. 1987) [hereinafter *DSM–III–R* ].[1] Accordingly, any attempt to discern the onset of Morgan's mental disability requires a broad longitudinal approach which traces the course of his mental condition from its alleged date of onset in 1977, through the period ending his insured status in December 1979, to the present. The majority's abbreviated and narrowly-focused treatment of the evidence supporting Morgan's claim for mental disability benefits thus paints an incomplete, if not inaccurate, portrait of his mental condition during the relevant time period.

A broad view of Morgan's condition reveals a steady downward progression in his mental health commencing well before 1984. Morgan dates the onset of his mental difficulties to a hernia operation in late 1977. Shortly after release from the hospital, Morgan began to experience somatic symptoms including recurrent chest pains, rapid pulse, weakness, and exertional fatigue. He additionally complained of increasing anxiety and difficulty coping with daily life.[2] During this period, Morgan

---

**1.** The most common course of schizophrenia is one of acute exacerbations and relative remissions which rarely return the sufferer to baseline functioning. *Textbook of Psychiatry* at 767; *DSM–III–R* at 191. Moreover, while no pathognomonic clinical sign or symptom has yet been associated with schizophrenia, the illness invariably involves delusions, hallucinations, or certain characteristic disturbances in thought and affect in one or more of its phases. *DSM–III–R* at 187.

**2.** Morgan's complaints of somatic discomfort and feeling overwhelmed by internal and external pressures are signs consistent with the prodromal phase of schizophrenia. *Textbook of Psychiatry* at 759, 767; *DSM–III–R* at 190.

also received counseling from a community mental health clinic in Crescent City, California.[3]

In the year following the expiration of his insured status in December 1979, Morgan sought treatment from numerous medical professionals who noted his deteriorating mental state. Only four weeks after his insured period ended, Morgan visited a hospital emergency room complaining of "extreme anxiety." The attending physician noted Morgan's state of distress in his report:

> A 56 year old male who has been under a great amount of stress, including financial, job related and family for approximately the past 2 years. This has become progressively worse in the past year. He has been seen ... [by his treating physician] numerous times for tachycardia, chest pain; he has had several cardiac studies, including stress test. These have all been normal. The man now states that he has a potentially serious time in his life, he feels that he will explode if he can't deal with the situation, claims that he is not a man who comes to doctors, he feels he needs help...."

The physician encouraged Morgan to seek counseling and prescribed a trial dose of Valium. In February 1980—just six weeks after the expiration of his insured status—Dr. Dysart, a rheumatologist, described Morgan as "nearly incapacitated by severe depression and chronic anxiety with somatization." Dr. Dysart prescribed medication and suggested that Morgan continue counseling at the Crescent City mental health clinic, but cautioned that "the severity of his psychiatric disorder may require formal psychiatric consultation."

Finally, in April 1980 a consulting physician with the California Department of Rehabilitation noted Morgan's complaints of chest pains and exertional weakness and commented that Morgan appeared "some-

what anxious." Characterizing Morgan's chest pains as likely psychogenic in origin, the physician described his prognosis as "poor."

Morgan's next medical contact of record occurred in December 1981. Dr. Mersch, consulting for the Secretary's Disability Determination Services, examined Morgan and noted his numerous mental and physical difficulties. Morgan reiterated his complaint of chest pain. Morgan also complained of difficulties in thought and association, stated his hostility to the medical profession, and expressed his fear of pills. During the course of the exam, Morgan claimed to have died "at least 30 times" as a result of psychic surgery on his heart in Peru and Canada. Dr. Mersch diagnosed Morgan as suffering from, *inter alia,* "questionable nervous system defect and/or anxiety reaction" for which he recommended CAT scan and EEG evaluation for possible nervous system defect.

In late 1984, Morgan received his first recorded psychiatric assessment. Dr. Fried, a psychiatrist, commented in his report on the extent of Morgan's decompensation and diagnosed him as suffering from psychosis, likely grounded in paranoid schizophrenia. Dr. Fried also recounted Morgan's descriptions of his psychosurgeries, special powers to fix mechanical objects, loss of reading ability because of "doping" by the medical profession, and penchant for carrying around a glass jar filled with broth which he claimed to be his lung tissue. He further characterized Morgan as currently incapacitated by somatic delusions, with poor prognosis for recovery without psychiatric care.

Taking into full account the course and progression of Morgan's mental disability, particularly his obvious mental difficulties in the early months of 1980, one cannot help but conclude that his mental impairment approached disabling severity long before his actual diagnosis as schizophrenic in 1984. While Morgan admittedly re-

---

**3.** Because the Crescent City clinic's records are regularly destroyed after five years, no records exist as to the nature of Morgan's treatment at the clinic during this period.

ceived no psychiatric evaluation until 1984, he did receive care from other health care professionals—including an emergency room physician, a rheumatologist, and an occupational specialist—clearly documenting his deteriorating mental state in the critical months around December 1979. Accordingly, it was error for the Secretary to attempt to infer the onset date of Morgan's disability without first appointing a medical advisor, or, alternatively, eliciting evidence from nonmedical sources if reasonable inferences about the progression of his impairment could not be medically established. *See Lichter v. Bowen,* 814 F.2d 430, 435–36 (7th Cir.1987) (ALJ erred in failing to appoint medical advisor according to terms of SSR 83–20 when onset date of claimant's mental disability not subject to precise determination from administrative record); *Naylor v. Sullivan,* 1989 WL 58262, 1989 U.S.Dist. LEXIS 6080, 4 (N.D. Ill.1989) (same); *Hadley v. Bowen,* 1989 WL 18313, 1989 U.S.Dist. LEXIS 2084, 6 n. 3 (N.D.Ill.1989) (same); *cf. Swanson,* 763 F.2d at 1066 n. 2 (SSR 83–20 does not allow Secretary to rely on date of diagnosis as date of onset when "symptoms of disability and available medical evidence are consistent with a disability diagnosed only at a much later date").

### C.

The Secretary's unexplained failure to apply SSR 83–20's evidentiary guidelines underscores his broader error in failing to develop a full and complete administrative record on Morgan's Title II disability claim. The courts have long recognized an ALJ's special duty in social security cases to fully and fairly develop the record necessary to make an informed decision on a claimant's entitlement to disability benefits. *See, e.g., Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987) (disability hearing "a *nonadversarial proceeding*" in which the ALJ has the basic duty of inquiry "to inform himself about facts relevant to his decision")

(emphasis added); *Poulin v. Bowen,* 817 F.2d 865, 870–71 (D.C.Cir.1987); *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir.1983). The ALJ's responsibility to develop evidence takes on heightened significance when the claimant is mentally impaired. *Deblois v. Secretary of Health & Human Services,* 686 F.2d 76, 81 (1st Cir.1982); *see also Poulin,* 817 F.2d at 870–71. Failure to create an adequate administrative record constitutes good cause for remand under 42 U.S.C. § 405(g). *See, e.g., Poulin,* 817 F.2d at 870; *Carrillo Marin v. Secretary of Health & Human Services,* 758 F.2d 14, 17 (1st Cir.1985); *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981) (per curiam).

At no point in the administrative proceedings related to Morgan's Title II disability claim has an adequate record been developed on the question of *when* his mental condition became disabling. Morgan was the sole witness testifying at his disability hearing.[4] Remarkably, the Secretary made no effort to ascertain from medical or lay witnesses Morgan's mental condition during the critical time period around the December 1979 expiration date of his insured status. Because of this evidentiary gap, it is not possible to determine with any degree of certainty whether Morgan's mental difficulties in 1984 represented the first active manifestation of his illness, or rather one of many instances of significant decompensation he had experienced over the last several years. This lack of record inquiry into the broad contours of Morgan's mental illness, including its etiology, course, and severity, makes informed judgment impossible at this stage in the proceedings.

While mindful of the principle that the claimant carries the burden of proof on disability, the Secretary nonetheless retains the obligation to develop an adequate record necessary for intelligent appellate review. *See Carrillo Marin,* 758 F.2d at 17. I would thus reverse the judgment of the district court and remand to the Secre-

---

**4.** Morgan's testimony at this April 1985 hearing provided scant assistance on the onset date issue as his mental impairment had progressed, by this time, to a level which prevented him from

coherently responding to questions posed by the court and his counsel. Indeed, the ALJ characterized Morgan's testimony as "bizarre and out of touch with reality."

tary for further proceedings designed to determine the period in which Morgan's mental impairment reached disabling severity. *See Mitchell v. Bowen*, 827 F.2d 387, 389–90 (8th Cir.1987) (reversing and remanding Secretary's denial of disability benefits for failure to fully develop record with respect to onset date of claimant's disability); *Poulin*, 817 F.2d at 871–72 (remanding denial of schizophrenic claimant's disability benefits for further development of evidence bearing on onset date of her mental disability); *Deblois*, 686 F.2d at 80–81 (same).