939 F.2d 596
 34 Soc.Sec.Rep.Ser. 267, Unempl.Ins.Rep. CCH 16198A
Robert F. NESSELROTTE, Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services of the United States, Appellee.
 No. 90-3003.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1991.
Decided July 24, 1991.
 
 James P. Cavanaugh, Omaha, Neb., for appellant.
 Daniel A. Morris, Omaha, Neb. and Sandra L. Wallace, Kansas City, Mo., for appellee.
 Before FAGG and WOLLMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Robert F. Nesselrotte appeals from an order of the district court entering summary judgment in favor of the Secretary of Health and Human Services (Secretary) in this social security disability case. We reverse and remand.
 
 
 2
 On April 23, 1987, Nesselrotte, who was born in 1940 and has a high school education, applied for disability insurance benefits, alleging a disability due to a neck injury. After the application was denied initially and on reconsideration, Nesselrotte appeared before an administrative law judge (ALJ). At the May 1988 hearing Nesselrotte testified that he had been an over-the-road truck driver from 1966 until January 1983, when he hit his head on the top of the truck cab. He testified that since the accident he had been unable to work because of arm and neck pain, frequent and severe headaches, blurred vision, and ringing in his ears. He stated that he had not obtained relief from medications, which often caused side effects, including fatigue, difficulty in breathing and an irregular heartbeat. On his "good days" he did some housework. The ALJ asked Nesselrotte if he could perform a "very easy job where [he] would not have to do anything except answer the telephone." He stated he probably could, but doubted he could perform the job on a consistent basis because of the frequency and severity of the headaches.
 
 
 3
 The medical evidence of record reveals that from August 1984 to March 1986, Nesselrotte was under the care of Dr. James Rowland, an osteopath. Dr. Rowland treated Nesselrotte's complaints of headaches with injections and manipulations. In February 1987 Nesselrotte consulted Dr. Leonard Weber, a neurologist, complaining of headaches. Dr. Weber diagnosed chronic ligamentous strain and prescribed medications, which caused shortness of breath and stomach discomfort.
 
 
 4
 In June 1987 Nesselrotte saw Dr. Jan Golnick, another neurologist. Nesselrotte complained of frequent and severe headaches, blurred vision, pain and weakness of the left arm, and neck pain. Nesselrotte described the headaches as a "throbbing, pounding, pulsating ... band around his head." He stated the headaches were triggered by weather and barometric changes, forward movement of his head, and lying on his right side. An electroencephalogram showed "persistent focal slowing over the right parietal and occipital head regions." A brainstem auditory was also abnormal. Although visual testing was normal, given the 1983 head injury, Dr. Golnick believed Nesselrotte's vision impairment was cortical in nature. Nesselrotte returned in July and October 1987, still complaining of constant headaches, blurred vision, ringing in the ears, neck pain, weakness of the left arm, and tenderness of the cervical spine. He also reported that he was unable to tolerate a prescribed medication. By letter of November 10, 1987, Dr. Golnick stated that Nesselrotte had "objective evidence of injury to the central nervous system. There is injury to the cerebral cortex causing marked impairment of visual perception as well as impairment of hearing most likely on a cortical basis due to injury of the brain."
 
 
 5
 The ALJ denied benefits. Relying on the Medical-Vocational Guidelines, the ALJ found that although Nesselrotte could not return to his job as a truck driver, he retained the residual functional capacity to perform sedentary work. The ALJ found that Nesselrotte had no significant nonexertional impairments. The ALJ discounted Nesselrotte's complaints of disabling headaches, noting he testified he did housework and probably could perform an easy job. The ALJ also noted there were no "documented adverse side-effects from his medical regime" and that Nesselrotte sat through the hearing with no apparent discomfort. The ALJ further found that Nesselrotte did not have a significant visual or auditory impairment and that he had full use of his arms.
 
 
 6
 The ALJ made several errors warranting remand. Initially, we note that the ALJ erred in relying on the Medical-Vocational Guidelines. This court has recently reaffirmed that "[i]f the claimant suffers from a nonexertional impairment that limits his ability to do the full range work in one of the specific categories set forth in the guidelines, the Secretary's burden can be met only through the testimony of a vocational expert." Groeper v. Sullivan, 932 F.2d 1234, 1235 n. 1 (8th Cir.1991). Here, aside from Nesselrotte's allegations of headaches, see Johnson v. Secretary, 872 F.2d 810, 814 (8th Cir.1989) (headaches are nonexertional impairments), the presence of a "marked" visual impairment would preclude reliance on the guidelines. In addition, there is uncontradicted medical evidence that Nesselrotte does not have full use of his left arm and that his neck movement is significantly restricted. In such a case, it was incumbent upon the ALJ to call a vocational expert.
 
 
 7
 We also find that the ALJ failed to develop the medical evidence. The Secretary correctly notes there is no evidence in the record indicating that Nesselrotte was treated between January 1983 and August 1984. There are, however, indications that Nesselrotte had medical treatment, including the fact that from January through November 1983 Nesselrotte received worker's compensation benefits on account of the injury. It was the ALJ's duty to develop the record, even if Nesselrotte was represented by counsel. See Mitchell v. Bowen, 827 F.2d 387, 389 (8th Cir.1987) (per curiam). We also note that Nesselrotte reported to Drs. Weber and Golnick that he had seen at least five doctors, in addition to Dr. Rowland. Furthermore, it is hard to find that the ALJ adequately developed Nesselrotte's testimony at the thirty-minute administrative hearing concerning his impairments and their functional restrictions.
 
 
 8
 Finally, we comment on the ALJ's credibility findings. We do not believe that the ALJ gave full consideration to the factors set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984) (subsequent history omitted). We remind the ALJ that in addition to the objective medical evidence, which in this case is consistent with Nesselrotte's allegations of disabling headaches, the ALJ must consider Nesselrotte's work record, and physicians' observations relating to:
 
 
 9
 1. [his] daily activities;
 
 
 10
 2. the duration, frequency, and intensity of the pain;
 
 
 11
 3. precipitating and aggravating factors;
 
 
 12
 4. dosage, effectiveness and side effects of medication;
 
 
 13
 5. functional restrictions.
 
 
 14
 Id. at 1322. Although an ALJ may discount a claimant's allegations of disabling pain if there are inconsistencies in the record, he may not "reject subjective complaints solely on the basis of personal observation."[1] Id. We also remind the ALJ that the opinion of a treating physician is entitled to great weight. Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir.1987).
 
 
 15
 Accordingly, the judgment of the district court is reversed and remanded with instructions to remand the case to the Secretary for further administrative proceedings consistent with this opinion.
 
 
 
 [1]
 The ALJ discounted Nesselrotte's allegations of disabling headaches, in part, finding that Nesselrotte had no "adverse side effects from his medical regime." This finding is contrary to the office notes of Drs. Weber and Golnick, which reveal that Nesselrotte consistently reported adverse side effects of medications. The ALJ also impermissibly discounted Nesselrotte's allegations based on his testimony that on "good days" he performed some light housework and could probably perform an "easy" job, though could not do so with the consistency employers require. See Johnson v. Secretary, 872 F.2d at 814 ("Regardless of the fact that Johnson could perform some activities ... when a headache occurred, the uncontradicted testimony showed that he was totally prevented from any activity for the duration of the headache.") (footnote omitted)