**Luis ALBORS, Plaintiff, Appellant,**

v.

**SECRETARY OF HEALTH AND HU-
MAN SERVICES, Defendant,
Appellee.**

**No. 86–1482.**

United States Court of Appeals,
First Circuit.

Submitted Nov. 7, 1986.
Decided Dec. 10, 1986.

Felix M. Zeno Gloro, Arecibo, P.R., on brief for plaintiff, appellant.

Nathan K. Kobin, Office of the General Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., Donald A. Gonya, Chief Counsel for Social Security, Randolph W. Gaines, Deputy Chief Counsel for Social Security Litigation and A. George Lowe, Chief, Disability Litigation Branch, Baltimore, Md., on brief for defendant, appellee.

Before COFFIN, BOWNES and TORRUELLA, Circuit Judges.

PER CURIAM.

Claimant has a back and neck ailment. Both claimant's treating physician and the Secretary's consulting doctor have reported various "objective" findings. These include CAT scan reports of severe osteoarthritic changes of cervical spine with foraminal narrowing, less severe degenerative changes of the lumbar spine, and limited cervical (neck) and lumbar spine range of motion. The doctors disagree, however, both on the particular diagnosis to assign to claimant's condition and on the extent claimant's functional capacity is limited. Dr. Nater, the treating physician, concluded claimant cannot perform any type of work, has to spend most of his time in bed, and will never be able to work because the condition is progressive. In contrast, a nonexamining physician who filled out a residual functional capacity form on the basis of the consulting neurologist's exam concluded claimant had a "moderate impairment due to severe skeletal changes [with] marked decrease in ROM [range of motion] of cervical spine" but nevertheless could lift up to fifty pounds, sit six hours, walk or stand six hours, and generally do medium work except that requiring repetitive head movements.

Claimant, who was sixty-one at the time of the hearing, testified he has constant neck and back pain which is intensified by movement. He can stand or walk an hour or drive short distances, but not the long distance required in his former work as an assistant sales manager, and sitting is painful, he said. On an average day, he will get up, walk awhile, sit awhile, read a little, and do walking exercises. He has had physical therapy in the past or heat therapy. Presently, he apparently takes no stronger pain medication than aspirin.

A vocational expert (VE) testified that claimant's past work—assistant sales manager in a brewery—was skilled and that claimant had acquired various intellectual, analytical, and interpersonal skills transferable to such jobs as quality control clerk in the pharmaceutical industry or billing clerk. None of the named positions, the VE said, required repetitive neck movements and claimant would be able to alternate positions.

The ALJ concluded claimant's complaints of pain were not credible to the degree of disfunction alleged. He ruled claimant could not return to his former work which required so much driving, but could perform the jobs listed by the VE. The ALJ also applied grid rule 201.07 (residual functional capacity for sedentary work, advanced age, high school graduate, past skilled work, transferable skills) which directs a finding of not disabled.

Claimant makes two main arguments: 1) that the ALJ should have given more weight to claimant's complaints of pain and 2) that the VE and ALJ erred in concluding claimant had transferable skills.

■ 1. *Pain.* According to the consulting neurologist, claimant has normal muscle tone and strength and no atrophy or involuntary movements. True, studies of claimant's spine have shown some severe osteoarthritic changes, and claimant has mild spasms and decreased range of motion. The non-examining physician, however, specifically took this into account in assessing claimant's residual functional capacity. This, together with the fact that claimant apparently takes nothing stronger than aspirin, supports the ALJ's rejection of claimant's assertions of disabling pain.

■ 2. *Transferable skills.* Grid rule 201.07, which the ALJ applied, directs a finding of not disabled. Grid rule 201.06 directs a finding of disabled. The only difference between the two rules is that rule 201.06 (disabled) applies when a claimant's skills are not transferable whereas rule 201.07 (not disabled) applies when the skills are transferable.[1] Consequently, a critical issue is whether claimant has transferable skills.

Claimant's past work was as an assistant sales manager, a position he held from 1968 to 1982. He had three supervisors and eight to thirteen salesmen under his direction. He trained these persons, instructed them on sales policy, credit policy, and relating to clients, checked their work, and prepared reports. He travelled daily, meeting with the employees and visiting clients.

In response to the ALJ's request to enumerate the skills claimant has acquired in

1. The relevant grid rules follow.

"TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Previous Work Exp. | Decision |
|------|-----|-----------|--------------------|----------|
| | | . . . | | |
| 201.06 | Advanced Age | High school graduate or more—does not provide for direct entry into skilled work | Skilled or semi-skilled—skills not transferable | Disabled |
| 201.07 | ʺ | ʺ | Skilled or semi-skilled—skills transferable | Not disabled" |

his past job as sales supervisor, the VE testified as follows:

"There are activities such as dealing with persons that is a skill that is acquired; to be able to supervise persons; to be able to communicate effectively with other persons; to coordinate his movements; capacity to interpret reports; capacity to prepare reports."

The VE said these skills were transferable:

"Well, I understand that they could be transferable to this type of activity. Activities that we could find, for example, in the pharmaceutical industry, the work as quality control clerks. Works such as ... tablet inspector.

"Within the medical/hospital industry, we could find works as billing clerks; works such as statistics officers.

.     .     .     .     .

"Basically in billing clerk, his analysis capacity, the capacity to interpret, the capacity to prepare reports; obviously these are skilled activities that he has already acquired and he could transfer easily in this type of activity."

Claimant argues that the various transferable "skills" the VE identified were not in actuality skills, but rather were common traits or aptitudes that even the most unskilled worker would have.

Of course, the majority of all workers do have to think, communicate, and deal with other persons, at least to some small degree, and thus at that minimal level, basic thinking and communication many not technically be skills, as that term is used in the regulation. But the VE was testifying with respect to claimant's past job which required claimant to visit clients daily, to supervise supervisors, and to prepare reports. The question is whether the communicative, intellectual, and interpersonal abilities necessary to perform successfully at that level could be properly classified as acquired "skills."

Social Security Ruling 82–41 defines skill as follows:

"a. What a 'skill' is. A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market."

As an example of a job requiring highly developed interpersonal skills, the ruling refers to a president or chief executive officer of a business organization who "may need exceptional ability to deal with people...." The ruling continues,

"At the upper end of skilled work are jobs like architect, aircraft stress analyst, air-conditioning mechanic, and various professional and executive or *managerial occupations*. [Emphasis added.] People with highly skilled work backgrounds have a much greater potential for transferability of their skills because *potential* jobs in which they can use their skills encompass occupations at the same and lower skill levels, through semiskilled occupations. Usually the higher the skill level, the more the potential for transferring skills increases...."

Consistent with this ruling and the VE's testimony, we think the Secretary could properly conclude that claimant's past managerial work was a fairly highly skilled one, that claimant had developed valuable interpersonal, analytical, and intellectual skills performing it, and that these skills generally were transferable.

There is an additional consideration, however, because claimant, sixty-one at the time of the hearing, was of advanced age. The Secretary's regulations provide,

"(f) In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms

of tools, work processes, work settings, *or* the industry." (Emphasis added.) 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(f).

At first glance, it might be thought there is very little similarity between claimant's former work—assistant sales manager for a brewery—and the jobs the VE listed—quality control clerk in the pharmaceutical industry and billing clerk in the hospital industry. However, the regulation is written in the disjunctive, and the VE testified that claimant would require very little vocational adjustment in terms of tools, work procedures, work setting, or the industry, but rather would be able to perform after simple instructions within a few days. Moreover, claimant's skills—intellectual, analytical, managerial and interpersonal ones—appear to be less job specific than, say, those of a piano player. Rather, they are of wider potential applicability. As Ruling 82-41 explains,

> "Generally, where job skills are unique to a specific work process in a particular industry, or work setting, *e.g.*, carpenter in the construction industry, skills will not be found to be transferable without the need for more than a minimal vocational adjustment by way of tools, work processes, work settings, or industry. On the other hand, where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC."

In this context, we think the Secretary could properly conclude that the general work processes—in other words, the intellectual and analytical processes—utilized in being, say, a billing clerk in a hospital are not significantly different from those involved in the credit and reporting aspects of claimant's former work and that hence claimant's skills would be transferable with little vocational adjustment.[2]

*Affirmed.*

---

**2.** It is true that the VE also testified—and the Secretary found—that claimant could be a tablet line inspector, a job the VE said was "not skilled." It is not entirely clear whether by "not skilled" the VE meant "unskilled" or "semiskilled." If the former, then the VE may have been assuming that regardless whether claimant had transferable skills, he was nevertheless capable of learning and adjusting to unskilled work, an assumption which would seem at odds with grid rule 201.06 which directs a finding of disabled unless claimant has transferable skills. *Cf., Vazquez v. Secretary,* 683 F.2d 1, 4 (1st Cir.1982). Error in this regard would be harmless in view of the Secretary's finding that claimant's skills were transferable to billing clerk.