**Georgette Poland v. SSA**          **CV-00-350-B**    **08/02/01**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


**Georgette D. Poland**

    **v.**                                       **Civil No. 00-350-B**
                                          Opinion No. 2001 DNH 141

**William A. Halter, Acting**
**Commissioner, Social Security**
**Administration**


**MEMORANDUM AND ORDER**

Georgette D. Poland applied for Title II Social Security Disability Insurance Benefits on November 3, 1994.  Poland alleged an inability to work since May 30, 1994, due to lower back pain and carpal tunnel syndrome.  The Social Security Administration ("SSA") denied her application initially and on reconsideration.  Administrative Law Judge ("ALJ") Robert Klingebiel held a hearing on Poland's claim on December 12, 1995. In a decision dated April 17, 1996, the ALJ found that Poland was not disabled.  On July 16, 1997, the Appeals Council vacated the ALJ's decision and remanded the case to him for a new hearing and decision.  The ALJ held a second hearing on January 27, 1998 and, in a decision dated February 24, 1998, he again found that Poland was not disabled.  On June 12, 2000, the Appeals Council denied

Poland's request for review, rendering the ALJ's decision the final decision of the Commissioner of the SSA.

Poland brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the denial of her application for benefits. Poland requests that this court reverse the Commissioner's decision and award her benefits. I conclude that Poland is not entitled to an order awarding benefits to her. For the reasons set forth below, however, I remand this case and direct that the ALJ take additional evidence.

## I. __FACTS__[1]

Poland was thirty-seven years old when she applied for benefits. She worked as a custodian, child-care provider, press operator, and, most recently, as a material handler from November 1982 until May 1994. Tr.[2] at 150. Poland has not worked since May 30, 1994, the date she claims her disability began. In December 1997, she received her high school equivalency degree.

---

[1] Unless otherwise noted, I take the following facts from the Joint Statement of Material Facts, Doc. No. 8, submitted by the parties.

[2] "Tr." refers to the certified transcript of the record submitted to the Court by the SSA in connection with this case.

Id. at 84.

Poland suffered neck, lower back, and wrist injuries in a motor vehicle accident on May 30, 1994. She was taken to the emergency room at Concord Hospital for treatment. The examining physician, Dr. Andrew Jaffe, observed that Poland was neurologically intact and had good range of motion in her neck. The radiologist reported that the x-rays of her cervical spine were normal. Dr. Jaffe diagnosed her with acute cervical strain and prescribed Robaxin. Although he also instructed Poland to wear a soft cervical collar, she declined to do so.

On June 1, 1994, Poland reported to Nurse Practitioner ("NP") Jody Goodrich that she had neck and lower back pain. She also described two brief episodes of bilateral hand numbness. Her sensory exam, however, was normal. NP Goodrich referred her to physical therapy. Tr. at 171. Poland returned to NP Goodrich a week later and said that her pain was "a little better." She noted that she had numbness in her hands two to three times a day which resolved quickly. She was diagnosed with severe cervical strain that appeared to be resolving slowly.

On July 8, 1994, Poland complained to NP Goodrich that her lower back was tender all the time, but stated that her condition

improved somewhat with physical therapy.  Tr. at 165.  She also reported that her neck pain was better, but that she could not lift any objects without pain.  Id.  In addition, Poland stated that she still suffered from intermittent hand numbness when she cooked or knitted.  NP Goodrich diagnosed her with persistent lumbar strain, and they both agreed that she probably could not go back to work.

Physician Assistant ("PA") Patrick McCarthy examined Poland on July 22, 1994.  He noted some point tenderness along Poland's entire cervical spine, but no pain in her lumbar spine.  Upon examination, Poland had full cervical flexion and extension.  Her strength was 5/5 in the finger intrinsics and flexors, and her upper extremity sensation was normal.  PA McCarthy indicated that Poland could engage in light-duty work, and encouraged her to return to work.

Three days later, Poland's physical therapist reported that Poland was slowly resolving her neck and back injury, although her back was still somewhat sore.  In addition, the physical therapist observed that Poland's functional mobility was much improved.

On August 31, 1994, Dr. William House, a neurologist,

-4-

examined Poland.  During her exam, Poland tested positive for carpal tunnel syndrome ("CTS")[3] during the Phalen's maneuver.[4] Tr. at 205, 229.  Dr. House diagnosed Poland with probable post-traumatic bilateral CTS and prescribed Ibuprofen and wrist splints.

NP Goodrich noted on October 25, 1994, that Poland showed only limited progress in resolving her cervical and lumbosacral strain symptoms.  She opined that Poland could not lift more than 5 to 10 pounds and that Poland could not sit for more than an hour without pain.  She also indicated that Poland would not be able to perform work which required significant manual labor but she could handle a part-time job in which she did mostly desk work with the opportunity to stand and walk frequently.

In a follow-up appointment with Dr. House, on November 30, 1994, Poland said she still experienced numbness in her hands.

---

[3] Carpal tunnel syndrome consists of a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling paresthesias in the fingers and hand, sometimes extending to the elbow. Dorland's Illustrated Medical Dictionary 1626 (28th ed. 1994).

[4] Phalen's test or maneuver is used to detect carpal tunnel syndrome and consists of reducing the size of the carpal tunnel by holding the affected hand with the wrist fully flexed or extended for 30 to 60 seconds. Id. at 985.

Dr. House's examination revealed no neurological abnormalities and showed that the Phalen's test was "weakly positive or perhaps not positive at all." Dr. House diagnosed Poland with mild CTS, and he ordered an upper extremity electromyograph ("EMG"). The EMG showed no evidence of active or chronic denervation, however, Dr. House concluded that the EMG confirmed Poland's mild CTS. He advised her to return to work and to continue with her treatment.

Dr. David Nagel, an orthopaedist, examined Poland on February 24, 1995. Poland told Dr. Nagel that she could no longer engage in snowmobiling and other sports. She also could not do all of her housework, and required help with the laundry and vacuuming. On examination, Poland exhibited almost full range of motion in her neck, marked tenderness over the left trapezius, and a positive Phalen's test at about 12 seconds for the right hand and 20 seconds for the left hand. Poland's forward lumbar flexion was moderately restricted. Dr. Nagel diagnosed Poland with cervical strain with myofascial pain, bilateral CTS, and lumbar strain.

In April 1995, Dr. Campbell, a medical consultant for the state disability determination agency, assessed Poland's physical residual functional capacity ("RFC"). He determined that Poland

was capable of performing light work with the exception that she should avoid rapid, repetitive movements with her hands and fingers. Tr. at 122.

In May 1995, Poland underwent another course of physical therapy. Her physical therapist reported that her progress was excellent. After therapy, Poland's upper extremity elevation was normal, her cervical range of motion improved from 50% to 75%, and her hand pain decreased. Poland, however, still complained of lumbosacral tightness and poor endurance when using her upper extremity for lifting.

In July 1995, another medical consultant for the state disability determination agency, Dr. Burton Nault, determined Poland's RFC. He affirmed Dr. Campbell's previous RFC for light work and also opined that Poland should avoid repetitive bending and lifting.

In February 1996, Dr. Nagel reported that Poland's neck pain and back pain were still severe. He noted that she was markedly symptomatic and, as a result, had significant functional limitations. In March 1996, Dr. Nagel opined that additional medical intervention was not likely to cause dramatic improvement in Poland's condition and that her functional limitations were

not likely to change.

In July 1996, Dr. Nagel reported to an insurance company that Poland's symptoms had reached the point of maximum medical improvement. He opined that she would be capable of sedentary, non-repetitive work with limited bending, twisting, and stooping. He was unable to estimate how many hours she could work, but he felt that with rehabilitation she could engage in part-time sedentary work.

In December 1996, physical and occupational therapists at the New Hampshire Center for Back Care at Concord Hospital performed a formal Physical Capacity Evaluation ("PCE") of Poland.[5] The test results revealed: (1) that Poland can bend, kneel, squat, stand, walk, sit, reach, drive, and perform fine motor activities only occasionally (1-33% of the time); (2) that she has a sedentary work capacity, which means she can lift 10 pounds occasionally and less than 5 pounds frequently; and (3) that she cannot perform repetitive motions with her right shoulder. Physical Capacity Summary, Doc. No. 6, at 1-2.

_____

[5] This evaluation is not part of the administrative record upon which the ALJ based his decision. Poland submitted a copy of the PCE, for the first time, with her motion to reverse the Commissioner's decision.

Specifically, the PCE indicated that Poland "demonstrates a very low weighted lifting ability at 7½-10 pounds with bilateral activities and low lift and carry activities [and] 3-5 pounds for unilateral reaching activities at shoulder height and above." Physical Capacity Evaluation, Doc. No. 6, at 3. In addition, the test results indicated that Poland could stand for 25 minutes and sit for 60 minutes continuously. Id. The evaluation did not estimate how many hours per day Poland could work.

In February 1997, Dr. Nagel reiterated that Poland's chronic cervical and lumbar strains and her CTS had reached the point of maximum medical improvement. Dr. Nagel adopted the results of Poland's PCE and reported that she could perform sedentary work with frequent breaks to stretch her neck, that she should avoid prolonged neck flexion, that she should avoid repetitive use of the arms without frequent breaks, and that she should limit any bending activities. Dr. Nagel expected that these restrictions would be permanent. In a letter to an insurance company in March 1997, Dr. Nagel estimated that Poland could work 4 to 6 hours per day, 3 to 5 days per week. He also noted that she should not engage in any repetitive grasping or pinching, she should not sit for more than one half-hour at a time without the ability to get

-9-

up and stretch, and she should not bend or twist repeatedly.

On April 23, 1997, Dr. Nagel rated Poland's level of impairment according to the AMA Guide to the Evaluation of Permanent Impairment. He assessed her cervical and lumbar range of motion and concluded that she suffered minor impairments (category 2) of both the cervical and lumbar spine.

In November 1998, Poland complained to Dr. Nagel about pain in her right trapezius muscle, which radiated up into her head and down through the shoulder. She also continued to have pain across her lower back which was aggravated by bending. In February 1999, Dr. Nagel reported that Poland felt better and that her pain had "quieted down." Tr. at 291. Poland told Dr. Nagel that she had started physical therapy again and felt that she was making "slow but steady gains" and that the "therapy does seem to help." Id.

## II. STANDARD OF REVIEW

After a final determination by the Commissioner denying a claimant's application for benefits, and upon timely request by the claimant, I am authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative

record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision. See 42 U.S.C. § 405(g). My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence. See id.; Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam). The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicts in the evidence. See Irlanda Ortiz, 955 F.2d at 769. Therefore, I must "uphold the [ALJ's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Id. (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation marks omitted).

While the ALJ's findings of fact are conclusive when supported by substantial evidence, they "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to the experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). I apply this standard in reviewing the issues that Poland raises on appeal.

### III. DISCUSSION

-11-

The Social Security Act (the "Act") defines "disability" for the purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act directs an ALJ to apply a five-step sequential analysis to determine whether a claimant is disabled.[6] See 20 C.F.R. § 404.1520. At step four, the ALJ must determine whether the claimant's impairment prevents her from performing her past work. See id. § 404.1520(e). To make this determination, the ALJ must assess both the claimant's residual functional capacity ("RFC"), that is, what the claimant can do despite her impairments, and the demands of the claimant's prior employment. See id.; 20 C.F.R. § 404.1545(a); see also Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991)

---

[6] In applying the five-step sequential analysis, the ALJ is required to determine: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. See 20 C.F.R. § 404.1520 (2000).

-12-

(per curiam).  The claimant, however, bears the burden of showing that she does not have the RFC to perform her past relevant work.  See Santiago, 944 F.2d at 5.

At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant can perform."  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (per curiam); see also Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (per curiam).  The Commissioner must show that the claimant's limitations do not prevent her from engaging in substantial gainful work, but need not show that the claimant could actually find a job.  See Keating, 848 F.2d at 276 ("The standard is not employability, but capacity to do the job.").

In this case, the ALJ concluded at step five of the sequential evaluation process that Poland was "not disabled." Tr. at 42, 47, 49.  The ALJ determined that Poland retains the RFC to perform light work[7] but that she should avoid work that

---

[7] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," "a good deal of walking or standing," and/or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

requires bending and lifting at the waist and repetitive manipulation with her hands.  Id. at 48.  Ultimately, the ALJ considered Poland's educational background, age, RFC, and the testimony of a vocational expert when he decided that Poland can perform jobs that exist in significant numbers in the national economy.  Id. at 47, 49.

Poland argues that the ALJ's decision was tainted by a number of legal errors.  First, Poland asserts that the ALJ improperly rejected the opinion of Dr. Nagel, her treating orthopedic physician, regarding her RFC.  Second, Poland argues that the ALJ did not properly evaluate her subjective complaints of pain.  Lastly, Poland argues that the ALJ improperly relied on the testimony of the vocational expert ("VE") because the hypothetical question posed to the VE did not fully reflect Poland's functional limitations.  I address each of these arguments in turn and, ultimately, conclude that they lack merit. In addition, although Poland did not raise this as a separate ground for reversal, I also address the ALJ's failure to fully develop the record and decide to remand the case for the taking

of additional evidence.[8]

## A.   The ALJ's Weighing of Dr. Nagel's Opinion

Poland contends that the ALJ improperly rejected Dr. Nagel's opinion concerning her RFC.  She argues that the ALJ failed to apply the appropriate factors for evaluating opinion evidence, and that had he done so, he would have found that Dr. Nagel's opinion was entitled to controlling or significant weight.  On March 3, 1997, Dr. Nagel opined that Poland retained the RFC to engage in sedentary work, as she can lift 10 pounds occasionally and 5 pounds frequently.[9]  He estimated that Poland could work 4 to 6 hours per day, 3 to 5 days per week.  Tr. at 286.  The ALJ rejected Dr. Nagel's determination of Poland's RFC because neither Dr. Nagel's notes nor NP Goodrich's notes support those limitations.  Tr. at 44.

_____

[8]  Because this remand is pursuant to sentence six of 42 U.S.C. § 405(g), I will not enter a final judgment in this case until the Commissioner files any additional findings of fact or a modified decision.  See id.; Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

[9]  According to the SSA, sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;" occasional "walking and standing;" and frequent "sitting."  20 C.F.R. § 404.1567(a).

An ALJ must give controlling weight to the medical opinion of a treating physician where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not entitled to controlling weight, the ALJ must still determine the appropriate weight to give to the opinion by evaluating certain factors. See id. The ALJ must consider: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) whether and to what extent the opinion is supported by medical signs and laboratory findings; (iv) whether the opinion is consistent with other evidence in the record; (v) whether the physician's opinion concerns medical issues related to his area of specialty; and (vi) any other factors which support or contradict the opinion. Id. § 404.1527(d)(2)-(d)(6).

Dr. Nagel's opinion concerning Poland's RFC, however, is not a medical opinion; rather it is an opinion on an issue reserved to the Commissioner. See id. § 404.1527(e); SSR 96-5p, 1996 WL 374183, at *2 (1996). Therefore, Dr. Nagel's opinion is not

-16-

entitled to "controlling weight or special significance."

SSR 96-5p, 1996 WL 374183, at *2; see 20 C.F.R. § 404.1527(e)(3).

The ALJ, however, was still required to consider the applicable

factors in 20 C.F.R. § 404.1527(d) when he evaluated Dr. Nagel's

opinion concerning Poland's RFC. See SSR 96-5p, 1996 WL 374183,

at *3.

I conclude that the ALJ properly weighed the applicable

factors, although he did not explicitly address each one in his

decision. The ALJ determined that Dr. Nagel's opinion regarding

Poland's RFC was not supported by his medical notes or the

medical notes of other treating sources. Tr. at 44. This

conclusion is supported by substantial evidence in the record.[10]

_____

[10] Dr. Nagel fails to provide objective findings in his
notes which could support his determination of Poland's RFC. Dr.
Nagel's notes do reveal that Poland's range of motion is limited
due to her neck and back pain. Her functional limitations,
however, are not severe enough to support an RFC for part-time,
sedentary work. For example, when Dr. Nagel first examined
Poland in February 1995, he found that she had full range of
motion in her neck, shoulder, elbow, and wrists. Tr. at 207.
Poland, however, exhibited moderate restriction in forward
flexion. Id.
    In addition in April 1997, Dr. Nagel assessed Poland's
cervical and lumbar range of motion to determine her level of
impairment according to the AMA Guide to the Evaluation of
Permanent Impairment. He determined that she suffered only minor
impairments of both her cervical and lumbar spine. Id. at 278.

In addition, Dr. Nagel's opinion was not consistent with the RFC determinations of the state agency medical consultants. Dr. Campbell and Dr. Nault determined that Poland retained the RFC to perform light work with the additional limitations that she should avoid rapid, repetitive movements with her hands and fingers and repetitive bending and lifting. Tr. at 118, 126. For the foregoing reasons, I find that the ALJ's decision to reject Dr. Nagel's opinion was supported by substantial evidence in the record.

## B. The ALJ's Evaluation of Poland's Subjective Complaints of Pain

Poland argues that the ALJ failed to properly evaluate her subjective complaints of pain. Specifically, she contends that the ALJ did not properly analyze the Avery factors before he determined that her subjective complaints of pain were not credible. Poland alleges that she suffers neck and lower back pain when she exerts herself and when she is just sitting or standing for more than one half-hour at a time, and that the pain ranges in severity depending on the circumstances.

### 1. Standards Governing an ALJ's Credibility Determination

The SSA regulations require that the ALJ consider a

claimant's symptoms, including complaints of pain, when he is determining whether a claimant is disabled. See 20 C.F.R. § 404.1529(a).[11] The ALJ must evaluate the intensity, persistence, and functionally limiting effects of the claimant's symptoms so that the ALJ can determine how the claimant's symptoms limit his or her capacity for work. See id. § 404.1529(c)(1); SSR 96-7p, 1996 WL 374186, at *1 (1996). The ALJ must consider all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, the claimant's prior work record, and statements from the claimant, the claimant's treating or examining physician or psychologist, or other persons about how the claimant's symptoms affect her. 20 C.F.R. § 404.1529(c)(1)-(3).

---

[11] An ALJ must apply a two-step analysis to evaluate a claimant's subjective complaints of pain. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that can reasonably be expected to produce the pain and other symptoms alleged. See 20 C.F.R. § 404.1529(b); Da Rosa v. Sec'y of Health and Human Servs., 803 F.2d 24, 25 (1st Cir. 1986) (per curiam). Then, if such an impairment exists, the ALJ must evaluate the intensity and persistence of the claimant's symptoms. See 20 C.F.R. § 404.1529(c). The ALJ made a specific finding regarding the first step of the analysis. He determined that Poland suffered from "neck, low back and wrist injuries ... [that] cause some pain and discomfort." Tr. at 42. Therefore, I focus on the second step of the analysis.

The Commissioner recognizes that symptoms such as pain may suggest a more severe impairment "than can be shown by objective medical evidence alone." Id. § 404.1529(c)(3). Accordingly, the ALJ must evaluate the claimant's complaints of pain in light of the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his pain; (5) treatment, other than medication, the claimant receives or has received for relief of his pain; (6) any measures the claimant uses or has used to relieve pain; and (7) other factors concerning the claimant's limitations and restrictions due to pain. See id. § 404.1529(c)(3)(i)-(vii); see also Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29-30 (1st Cir. 1986). These factors are sometimes called the "Avery factors." In addition to considering these factors, the ALJ is entitled to observe the claimant, evaluate his demeanor, and consider how the claimant's testimony fits with the rest of the evidence. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam).

In assessing the credibility of a claimant's subjective complaints of pain, the ALJ must consider whether these complaints are consistent with the objective medical evidence and other evidence in the record.  See 20 C.F.R. § 404.1529(a).  While a claimant's complaints of pain must be consistent with the medical evidence to be credited, they need not be precisely corroborated with such evidence.  See Dupuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989) (per curiam).  The ALJ in making a credibility determination must also make specific findings as to the relevant evidence he considered in deciding whether to believe a claimant's subjective complaints.  Da Rosa, 803 F.2d at 26.

2.    The ALJ's Assessment of Poland's Subjective
      Complaints of Pain

Contrary to Poland's argument, the ALJ properly analyzed the Avery factors, and he made sufficient findings as to the relevant evidence he considered in deciding not to credit her subjective complaints of pain.  The ALJ heard considerable testimony regarding these factors at the hearing on January 27, 1998.  Tr. at 84-100.  He considered the evidence concerning the nature, frequency, and intensity of Poland's pain when he determined that

-21-

"she does not have a condition which involves constant intractable pain or other marked functional restrictions." Tr. at 45. Substantial evidence exists in the record to support his conclusion that Poland suffers from some pain, but that her pain does not preclude her from performing all work. Poland testified that her neck pain was severe enough to make her lie down only twice a month. Tr. at 91. In addition, she could sit for 45 minutes and stand for up to an hour without any back pain. Id. at 92. Furthermore, during Dr. Nagel's most recent examination of Poland on February 9, 1999, he noted that "[r]ight now she does feel better and her pain has quieted down." Tr. at 291.

The ALJ also made specific findings about Poland's daily activities. Tr. at 45. Poland stated that she cooks, does light housework, shops for groceries, cares for her basic needs, and reads books, newspapers, and periodicals. Id. at 142-43. She also drives on a regular basis and visits with her grandchildren twice a week. Id. at 45. Thus, there is substantial evidence in the record to support the ALJ's determination that because Poland is able to engage in some daily activities, she would still be able to engage in light work. See Roe v. Chater, 92 F.3d 672, 677 (8th Cir. 1996) ("More telling than a chronicle of [the

-22-

claimant's] various ailments are his actual activities, which are incongruous with his contention that he cannot work.")

In addition, the ALJ noted that Poland takes Tylenol, Somex and Aspirin for pain relief. Tr. at 45. Poland, however, told Dr. Nagel on November 10, 1998 that she is "not a pill taker" and that she has been taking stronger medication only when her symptoms worsened. Tr. at 289. Her treating nurse practitioner, however, stated on September 18, 1997, that Poland was on no chronic medications except for Advil. Tr. at 281. Based on this evidence, the ALJ could find that Poland's limited use of stronger medications suggests that her pain is not as severe as she alleges. Cf. Albors v. Sec'y of Health & Human Servs., 817 F.2d 146, 148 (1st Cir. 1986) (per curiam) (holding that the fact that a claimant takes no medication stronger than aspirin supports the ALJ's discrediting of the claimant's assertions of disabling pain).

Lastly, although the ALJ did not explicitly discuss the "other treatment" factor, the evidence in the record supports the proposition that physical therapy helps to alleviate Poland's pain. On February 9, 1999, Poland told Dr. Nagel that she was making "slow but steady gains" at physical therapy and that

"therapy does seem to help." Tr. at 291. In addition, following an earlier course of physical therapy, Poland's physical therapist remarked that her progress was excellent and that her cervical range of motion increased from 50% to 75%. Id. at 216. The fact that physical therapy can alleviate Poland's pain suggests that her symptoms are not so debilitating as to prevent her from engaging in all types of work.

For the foregoing reasons, I find that the ALJ's analysis of the Avery factors was proper and that substantial evidence exists to support his conclusion that Poland's pain is not severe enough to preclude her from engaging in all work. Therefore, I conclude that the ALJ's determination that Poland's subjective complaints of pain were not entirely credible is supported by substantial evidence and thus entitled to deference.

## C. The ALJ's Reliance on Vocational Expert Testimony

Lastly, Poland argues that the ALJ improperly relied on the testimony of the VE because the hypothetical question the ALJ posed to the VE did not fully reflect her functional limitations. For the following reasons, I disagree.

Once a claimant proves that he is incapable of returning to his prior jobs, the burden shifts to the Commissioner to come

forward with evidence of specific jobs in the national economy that the claimant is capable of performing. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982); 20 C.F.R. § 404.1520(f). The Commissioner can meet his burden of proof on this issue by relying on the testimony of a VE. See Arocho, 670 F.2d at 375; see also Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 429-30 (1st Cir. 1991) (per curiam).

In order to rely on the VE's testimony, however, the ALJ must pose to the VE a hypothetical question that accurately reflects the claimant's functional limitations. See Berrios Lopez, 951 F.2d at 429. That is, the ALJ may credit the VE's response only if there is "substantial evidence in the record to support the description of [the] claimant's impairments given in the ALJ's hypothetical." Id.; see Arocho, 670 F.2d at 375.

In this case, the ALJ's hypothetical question to the VE included the following limitations: she is limited to lifting and carrying no more than 20 pounds maximum; she can not use her hands for rapid, repetitive activities; and she can not repetitively bend, particularly at the waist, nor repetitively lift items off the floor to put them onto a table or workbench.

Tr. at 103-04.  The VE found that an individual with those functional limitations could perform a number of jobs including: retail sales, teacher's aide, receptionist/information giver, and security guard.  Id. at 105-06.

Poland argues that the ALJ cannot rely on the testimony of the VE because the ALJ failed to include the limitations that Poland can only lift 10 pounds occasionally and 5 pounds frequently, that she can only engage in sedentary work for 4 hours, three to five times a week, and that she can sit no more than one half-hour at a time.  These limitations embody the limitations listed in Dr. Nagel's determination of Poland's RFC.  Tr. at 110.

Poland's argument lacks merit because the ALJ discredited these limitations when he rejected Dr. Nagel's opinion concerning Poland's RFC.  I determined earlier that the ALJ's decision to reject Dr. Nagel's opinion is supported by substantial evidence in the record.  Therefore, because the ALJ was entitled to discredit these limitations, he was not required to include them in his hypothetical to the VE.

Moreover, the functional limitations the ALJ included in his hypothetical are supported by substantial evidence.  Those

limitations are consistent with the RFC determinations of Dr. Campbell and Dr. Nault, the state agency medical consultants, and with Physician Assistant Patrick McCarthy's determination that Poland could engage in light-duty work.  Tr. at 118, 126, 166. Because substantial evidence in the record supported the description of Poland's functional limitations, I conclude that the ALJ properly credited the VE's response to the hypothetical.

D.    **The ALJ's Failure to Develop the Record**

Notwithstanding the fact that I conclude that Poland's arguments lack merit, I find that the ALJ breached his duty to develop a full and fair record from which to make a reasonable determination regarding Poland's disability.  See Heggarty, 947 F.2d at 997; Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980).  The ALJ failed to obtain a copy of Poland's December 1996 Physical Capacity Evaluation ("PCE").[12] The PCE could have impacted the ALJ's decision regarding Poland's disability because the PCE determined that Poland retained the RFC to perform only sedentary work.

_____

[12]  The ALJ knew that the PCE existed at the time he rendered his second decision, as he stated that "Dr. Nagel notes that [Poland] had a physical capacity assessment with indicated a sedentary part time work capacity."  Tr. at 43.

In addition, the ALJ's duty to develop the record was enhanced in this case because the PCE was necessary to fill a gap in the record and the ALJ could easily obtain a copy of it. See Heggarty, 947 F.2d at 997; Currier, 612 F.2d at 598. The PCE fills a gap in the record because it is the only physical capacity assessment which contradicts the RFC determinations of the state medical consultants. The PCE indicates that Poland has a sedentary work capacity, whereas Dr. Campbell and Dr. Nault concluded that Poland retains the RFC to engage in light work. Tr. at 43, 119-26. This distinction is crucial because the SSA considers light work to be more strenuous than sedentary work. See 20 C.F.R. § 404.1567(a)-(b).

Because I find that the PCE could have impacted the ALJ's decision, I direct the ALJ, pursuant to 42 U.S.C. § 405(g), to obtain a copy of the PCE and any other medical records relating to the PCE. See 42 U.S.C. § 405(g) (The district court "may at any time order additional evidence to be taken before the Commissioner ..., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). As I discuss below, this evidence satisfies the

three requirements of Section 405(g)-- newness, materiality, and good cause-- that must be met before a district court may remand a case to the Commissioner to obtain additional evidence.  See id.; Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139 (1st Cir. 1987).

Evidence is new if it is non-cumulative and has not been previously presented to the ALJ.  Evangelista, 826 F.2d at 139-40.  Evidence is material if its inclusion in the record is necessary to develop the facts of the case fully and to afford the claimant a fair hearing.  Id.  Determining whether evidence is material also requires a showing of prejudice; a showing that if the ALJ had considered the proposed evidence, his decision might reasonably have been different.  See Faria v. Comm'r of Soc. Sec., 187 F.3d 621, No. 97-2421, 1998 WL 1085810, at **1 (1st Cir. 1998) (per curiam) (table, text available on Westlaw); Evangelista, 826 F.2d at 140.  Finally, the good cause requirement is satisfied when the ALJ fails to adequately develop the administrative record.  See Heggarty, 947 F.2d at 997-98; Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 16 (1st Cir. 1985).

The PCE constitutes new evidence because it is non-

-29-

cumulative: it is the only physical capacity assessment that contradicts the RFC determinations of the state medical consultants. Furthermore, the PCE was not previously presented to the ALJ; it was presented for the first time to this Court.[13]

The PCE is also material. The PCE is necessary to fully develop the facts of this case because the findings of the PCE contradict the RFC determinations of the state medical consultants, which the ALJ relied upon. See Evangelista, 826 F.2d at 139. In addition, because the ALJ must consider all allegations of physical restrictions when determining a claimant's RFC, the PCE is essential to a fair hearing. See id.; see also SSR 96-8p, 1996 WL 374184, at *5 (1996) (emphasizing that the ALJ, when determining a claimant's RFC, must "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC").

Furthermore, if the ALJ had considered the PCE, his decision

_____

[13] The record contains a reference which suggests that the PCE may have been presented to the Appeals Council following the ALJ's second decision. Tr. at 12. The fact that the PCE was not made part of the administrative record, however, leaves open the possibility that the Appeals Council never received a copy of the PCE.

might reasonably have been different.  See Evangelista, 826 F.2d at 140.  The ALJ stated that Dr. Nagel's opinion regarding Poland's limitations was not supported by medical notes in the record.  Tr. at 44.  The ALJ, however, did not consider the PCE, which provided support for Dr. Nagel's opinion as to Poland's RFC.

In addition, the PCE is based on Poland's actual maximum lifting ability, determined through graduated increases in weight.  See Physical Capacity Evaluation and Summary, Doc. No. 6.  In contrast, the state medical consultants determined Poland's RFC based solely on a review of her medical records.[14]  Thus, if the ALJ had evaluated the PCE he might have chosen to adopt the findings of the PCE instead of the RFC determination of the state medical consultants because the PCE included actual physical testing.  If the ALJ adopted the findings of the PCE in

_____

[14]  The Commissioner argues that I should not remand this case for consideration of the PCE because the PCE was not conducted by an acceptable medical source.  See 20 C.F.R. § 404.1513(a).  The PCE, however, would be considered "[i]nformation from other sources [that] may also help [the Commissioner] to understand how [a claimant's] impairment affects [her] ability to work."  Id. § 404.1513(e).  Because information from other sources is also considered medical evidence that the ALJ must consider, I reject the Commissioner's argument.  See id. §§ 404.1512, 404.1513.

his RFC determination, he consequently would need to conclude that Poland retained the RFC to perform sedentary work, but not light work.[15]   Therefore, I find that the ALJ's decision might reasonably have been different if he had considered the PCE.  See Evangelista, 826 F.2d at 140.

Lastly, I find that the ALJ's failure to obtain material medical records that he knew existed constitutes good cause for remand pursuant to 42 U.S.C. § 405(g).  See Carrillo Marin, 758 F.2d at 16 (holding that the ALJ's failure "to develop an adequate record from which a reasonable conclusion can be drawn" constitutes good cause for remand pursuant to § 405(g)); see also Heggarty, 947 F.2d at 997-98.

For the foregoing reasons, remand is appropriate to permit the ALJ to properly develop the administrative record.  The ALJ should obtain a copy of the PCE and any medical records relating to the PCE.  The ALJ should then consider the limitations presented in the PCE and determine whether to credit those limitations when determining Poland's RFC.

_____

[15]   If the ALJ on remand were to conclude that Poland retained the RFC to perform only sedentary work, he would also need to assess anew whether Poland could still perform jobs that exist in the national economy.

## IV. <u>CONCLUSION</u>

Poland is not entitled to an award of benefits.  I find, however, that the ALJ failed to fully develop the administrative record.  Therefore, remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate to permit the ALJ to take additional evidence.  Thus, I remand this case to the Commissioner for further proceedings consistent with this Memorandum and Order.  See <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).  Following the necessary administrative proceedings, the Commissioner should file with the Court any additional findings of fact or modified decision, at which time the Court will enter a final judgment.  42 U.S.C. § 405(g); <u>see</u> <u>Melkonyan</u>, 501 U.S. at 98.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge


August 2, 2001

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.

-33-